Richard M. Golomb
GOLOMB LEGAL P.C.
130 N. 18th Street, #1600
Philadelphia, PA 19103
Tel: 215-985-9177
rgolomb@golomblegal.com

Brian A. Glasser
BAILEY & GLASSER, LLP
1055 Thomas Jefferson St., NW
Suite 540
Washington, DC  20007
Tel: 202-463-2101
bglasser@baileyglasser.com

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| REBECCA LOVE, D.D.S., SHARON MURPHY, WILLIAM A. HENRY, ALISHIA GAYLE DAVIS, AND BRANDI CARL, INDIVIDUALLY AND ON BEHALF OF A PROPOSED CLASS,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>LLT MANAGEMENT LLC F/K/A LTL MANAGEMENT, LLC; JOHNSON & JOHNSON; JOHNSON & JOHNSON HOLDCO (NA) INC.; JANSSEN PHARMACEUTICALS, INC.; KENVUE INC.; J&J SERVICES, INC.; ROBERT WUESTHOFF; RICHARD DICKINSON; MICHELLE GOODRIDGE; JOAQUIN DUATO; THIBAUT MONGON; JOSEPH WOLK; LAURA MCFALLS; DUANE VAN ARSDALE; AND JOHN DOES 1-100,<br><br>　　　　　　　　Defendants. | Hon. Michael A. Shipp<br><br>Case No. 3:24-cv-06320 |

**NOTICE OF APPEAL**

Plaintiffs in the above case—Rebecca Love, D.D.S., Sharon Murphy, William A. Henry, Alishia Gayle Davis, and Brandi Carl, individually and on behalf of a proposed class—appeal to the United States Court of Appeals for the Third Circuit from the order denying preliminary injunctive relief entered on June 28, 2024.  *See* 28 U.S.C. § 1292(a)(1).

True and correct copies of the Opinion and Order of June 28, 2024 (ECF Nos. 31 & 32) are attached hereto. (*See* Exs. 1 and 2.)

Dated: July 3, 2024                                   Respectfully submitted,

<u>/s Richard M. Golomb</u>
Richard M. Golomb
Kevin Fay
GOLOMB LEGAL P.C.
130 N. 18th Street, #1600
Philadelphia, PA 19103
Tel: 215-985-9177
rgolomb@golomblegal.com
kfay@golomblegal.com

<u>/s Brian A. Glasser</u>
Brian A. Glasser *(admitted pro hac vice)*
BAILEY & GLASSER, LLP
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC  20007
Tel: 202-463-2101
bglasser@baileyglasser.com

## CERTIFICATE OF SERVICE

On the date set forth below, the undersigned did file the within Notice of Appeal, together with all exhibits using the Court's Electronic Case Filing System, thereby serving all counsel of record. Service of the within Notice of Appeal together with all exhibits was also served on the below counsel via email:

Kristen Fournier, Esq.
King & Spaulding LLP
1185 Avenue of the Americas, 34th Fl.
New York, NY 10036
Tel: (212) 556-2100
kfournier@kslaw.com

*Attorneys for Defendants*

Dated: July 3, 2024                                          */s/ Richard M. Golomb*
                                                             Richard M. Golomb

# Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| REBECCA LOVE, D.D.S. *et al.*, INDIVIDUALLY AND ON BEHALF OF A PROPOSED CLASS,<br><br>          Plaintiffs,<br><br>     v.<br><br>LLT MANAGEMENT LLC F/K/A LTL MANAGEMENT, LLC *et al.*,<br><br>          Defendants. | Civil Action No. 24-6320 (MAS) (RLS)<br><br>**ORDER** |

This matter comes before the Court on a Motion for Temporary Restraining Order and Preliminary Injunction by Plaintiffs Rebecca Love, D.D.S., Sharon Murphy, William A. Henry, Alishia Gayle Davis, and Brandi Carl, individually and on behalf of a proposed class (collectively "Plaintiffs"), against LLT Management LLC F/K/A LTL Management, LLC, Johnson & Johnson, and others (collectively "Defendants"). (ECF No. 6.) Defendants opposed (ECF No. 16), and Plaintiffs replied (ECF No. 25). For the reasons stated in the accompanying Memorandum Opinion,

**IT IS** on this 28th day of June 2024, **ORDERED** that:

1. Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 6) is **DENIED**.

/s/ Michael A. Shipp

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

# Exhibit 2

NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| REBECCA LOVE, D.D.S. *et al.*, INDIVIDUALLY AND ON BEHALF OF A PROPOSED CLASS,<br><br>Plaintiffs,<br><br>v.<br><br>LLT MANAGEMENT LLC F/K/A LTL MANAGEMENT, LLC *et al.*,<br><br>Defendants. | Civil Action No. 24-6320 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on a Motion for Temporary Restraining Order and Preliminary Injunction by Plaintiffs Rebecca Love, D.D.S. ("Love"), Sharon Murphy, William A. Henry, Alishia Gayle Davis, and Brandi Carl, individually and on behalf of a proposed class (collectively "Plaintiffs"), against LLT Management LLC F/K/A LTL Management, LLC ("LTL" of "LLT"),[1] Johnson & Johnson ("J&J"), and others[2] (collectively "Defendants"). (ECF No. 6.) Defendants opposed (ECF No. 16), and Plaintiffs replied (ECF No. 25). The Court has carefully considered the parties' submission and decides the matter without oral argument under Local Civil

---

[1] The company will be referred to as LTL before the name change and LLT after.

[2] These other defendants include: Johnson & Johnson Holdco (NA) Inc. ("New JJCI"); Janssen Pharmaceuticals, Inc. ("Janssen"); Kenvue Inc. ("Kenvue"); Johnson & Johnson Services, Inc.; Robert Wuesthoff; Richard Dickinson; Michelle Goodridge; Joaquin Duato; Thibaut Mongon; Joseph Wolk; Laura McFalls; Duane Van Arsdale; and fictious defendants. (*See generally* Compl., ECF No. 1.)

Rule 78.1. For the reasons stated below, the Court finds that it does not have subject-matter jurisdiction over this action. Accordingly, the Court denies Plaintiffs' Motion.

I.     **BACKGROUND**

This case is the next iteration in a long series of related cases arising from *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation* (the "Talc Litigation") (MDL No. 16-2738.) In October 2021, while the Talc Litigation was ongoing, J&J performed a divisional merger (the "Divisive Merger") under Texas law which allowed subsidiary Johnson & Johnson Consumer, Inc. ("Old JJCI") to split into LTL and New JJCI. (Compl. ¶¶ 27-29.) In practical effect, the Divisive Merger allowed J&J to assign the liabilities connected to the Talc Litigation to LTL, while all other liabilities and assets were assigned to New JJCI. (*Id.* ¶ 30.)

Subsequent to the Divisive Merger, J&J and New JJCI entered into a funding agreement (the "2021 Funding Agreement") which allowed LTL to access certain funding through Old JJCI. (*See id.* ¶ 33.) Thereafter, LTL, funded by the 2021 Funding Agreement and comprised solely of the Talc Litigation liabilities, relocated to North Carolina. (*Id.* ¶¶ 31, 32.)

Once the Divisive Merger was complete, LTL filed for bankruptcy (the "First Bankruptcy Action"), triggering an automatic stay of any efforts to collect from LTL outside of bankruptcy court. (*Id.* ¶ 37.) The Talc Litigation was one such collection effort that came to a standstill as a result of the stay. (*Id.* ¶ 39.)

After the Talc Litigation was stayed, New JJCI relocated to New Jersey (*see id.* ¶ 32), and the First Bankruptcy Action was transferred from North Carolina to the Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). (*Id.* ¶¶ 102-03.) Once in the Bankruptcy Court, Plaintiffs moved to dismiss the case. *See In re LTL Mgmt., LLC*, 64 F.4th 84, 93 (3d Cir. 2023).

The Bankruptcy Court denied Plaintiffs' motion, and extended the automatic stay. *Id.* Plaintiffs appealed. (Compl. ¶ 104.)

While Plaintiffs' appeal was pending in the Third Circuit, J&J transferred its consumer health business out of New JJCI and into a J&J subsidiary named Janssen. (*Id.*) Janssen was New JJCI's corporate parent. (*Id.* ¶ 47); *see also In re LTL Mgmt.*, 64 F.4th at 110-11. By virtue of this maneuver (the "Janssen Transfer"), the consumer health business was inaccessible to creditors of New JJCI.[3] (*Id.* ¶ 47.)

Shortly after the Janssen Transfer, the Third Circuit found that the First Bankruptcy Action was filed in bad faith to delay the Talc Litigation. (*Id.* ¶ 40); *see also In re LTL Mgmt.*, 64 F.4th at 110-11. Following the Third Circuit's ruling ordering dismissal of the First Bankruptcy Action, LTL raised concerns that the dismissal placed the 2021 Funding Agreement with J&J in doubt. (*Id.* ¶¶ 51, 56.) Consequently, LTL "gave up" on the 2021 Funding Agreement, which released J&J and New JJCI from their guarantee of LTL, and consequently, their obligation to satisfy all claims against LTL.[4] (*Id.* ¶¶ 51, 56, 57.) This release allegedly put LTL in financial distress and caused it to refile for bankruptcy (the "Second Bankruptcy Action") less than three hours after the dismissal of the First Bankruptcy Action. (*Id.* ¶¶ 60-61.)[5]

---

[3] The consumer health business was then transferred to another J&J subsidiary, Kenvu. (Compl. ¶ 48.)

[4] Another agreement (the "2023 Funding Agreement") of lesser value, approximately $30 billion, was entered into subsequent to the abandonment of the 2021 Funding Agreement. (Compl. ¶ 49.) The 2023 Funding Agreement was only between LTL and New JJCI. (*Id.*) J&J did not back the 2023 Funding Agreement, and pursuant to the terms of the 2023 Funding Agreement, it was only available in bankruptcy. (*See id.*)

[5] The Second Bankruptcy Action was also found to be filed in bad faith, this time by the New Jersey Bankruptcy Court. (Compl. ¶ 61); *In re LTL Mgmt., LLC*, 652 B.R. 433, 436 (Bankr. D.N.J. July 28, 2023).

3

Finally, on May 1, 2024, J&J approved a pre-packaged bankruptcy plan (the "Challenged Plan") that would be filed by a new corporate entity, Red River Talc LLC[6] ("Red River"). (*See* Compl. ¶ 109.) Specifically, the Challenged Plan would be filed by Red River if 75% of voters, consisting of people with claims in the Talc Litigation, agree to it. (Official Plan Website 1-2, Pl.'s Moving Br., Ex. 1, ECF No. 6-4.) On June 6, 2024, Defendants distributed solicitation materials and ballots for the Challenged Plan. (Pl.'s Moving Br. 1, ECF No. 6-1; Official Plan Website 2.)

On May 22, 2024, Plaintiffs filed a Complaint against Defendants alleging: (1) three counts of state-law actual fraudulent transfer: (2) three counts of state-law aiding and abetting fraudulent transfer; and (3) two counts of malicious use of process. (*See generally* Compl.) Plaintiffs now move for a temporary restraining order and preliminary injunction preemptively enjoining Defendants from seeking a new bankruptcy forum,[7] among other things. (Pl.'s Moving Br. 2.)

## II.    LEGAL STANDARD

### A.    Preliminary Injunction & TRO

"The standard for granting a temporary restraining order is the same as that for a preliminary injunction." *Nat'l Inst. of Sci. & Tech. v. Mohapatra*, No. 20-12361, 2020 WL 6323683, at *3 (D.N.J. Oct. 28, 2020) (citing *Nutrasweet Co. v. Vit-Mar Enters.*, 112 F.3d 689, 693 (3d Cir. 1997)). To warrant preliminary injunctive relief, a plaintiff must establish the following four elements: "(1) the plaintiff is likely to succeed on the merits; (2) denying the injunction will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in greater harm

---

[6] Red River has yet to be formed. (Long Form Notice at *2, annexed to Pl.'s Moving Br. as Ex. 4, ECF No. 6-7).

[7] While Plaintiffs do not directly allege claims related to this alleged fourth fraudulent transfer (*see generally* Compl.), the Court construes Plaintiffs' Complaint as preemptively bringing such claims for purposes of the instant motion. Accordingly, in this Opinion, the Court only assesses whether Plaintiffs have standing to bring claims related to any alleged future transfer or malicious use of process.

to the defendant; and (4) the injunction is in the public interest." *Watchung Spring Water Co. v. Nestle Waters N. Am. Inc.*, No. 14-4984, 2014 WL 5392065, at *2 (D.N.J. Oct. 23, 2014) (citing *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002)). "A [c]ourt will consider all four factors, but the first two are essential." *Leddy v. N. Valley Reg'l High Sch. Dist.*, No. 17-5245, 2017 WL 3923291, at *7 (D.N.J. Sept. 6, 2017). Finally, "[p]reliminary injunctive relief is an extraordinary remedy[,] and should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (internal quotation marks and citation omitted).

### B. Justiciability

Article III of the Constitution limits the federal judiciary's authority to exercise its "judicial Power" to "Cases" and "Controversies" over which the federal judiciary is empowered to decide. *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 538 (3d Cir. 2017) (quoting U.S. Const. art. III, § 2). "This case-or-controversy limitation, in turn, is crucial in 'ensuring that the Federal Judiciary respects the proper—and properly limited—role of the courts in a democratic society.'" *Id.* at 539 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). The existence of a case or controversy, therefore, is a necessary "prerequisite to all federal actions." *Phila. Fed'n of Teachers. v. Bureau of Workers' Comp.*, 150 F.3d 319, 322 (3d Cir. 1998) (quoting *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994)).

Federal courts ensure that they are properly enforcing the case-or-controversy limitation through "several justiciability doctrines that cluster about Article III . . . including 'standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions.'" *Plains*, 866 F.3d at 539 (quoting *Toll Bros., Inc. v. Township of Readington*, 555 F.3d 131, 137 (3d Cir. 2009)). Where a justiciability doctrine, like ripeness or standing, is implicated,

5

"[f]ederal courts lack [subject-matter] jurisdiction to hear" parties' claims, and the claims must be dismissed. *See Battou v. Sec'y U.S. Dep't of State*, 811 F. App'x 729, 732 (3d Cir. 2020) (citing *Armstrong World Indus., Inc. ex rel Wolfson v. Adams*, 961 F.2d 405, 410-11 (3d Cir. 1992)).[8]

## III. DISCUSSION

The Court's analysis will be brief as it cannot reach the merits of Plaintiffs' Motion.[9] In sum, this Court lacks subject matter jurisdiction where: (1) Plaintiffs have yet to suffer an injury-in-fact for purposes of establishing Article III standing and; (2) the controversy between the parties is not ripe for resolution.

### A. Article III Standing

"To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likl[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v.*

---

[8] "Federal Courts are courts of limited jurisdiction and have an obligation to establish subject matter jurisdiction, even if they must decide the issue sua sponte." *Cepulevicius v. Arbella Mut. Ins.*, 2022 WL 17131579, at *1 (emphasis omitted) (citing *Liberty Mut. Ins. Co. v. Ward Trucking Co.*, 48 F.3d 742, 750 (3d Cir. 1995)); *see also Council Tree Commc'n, Inc. v. F.C.C.*, 503 F.3d 284, 292 (3d Cir. 2007) (finding that federal courts have an unflagging responsibility to reach the correct judgment of law, especially when considering subject-matter jurisdiction "which call[s] into question the very legitimacy of a court's adjudicatory authority" (citation omitted)); *Gov't Emps. Ret. Sys. of Gov't of U.S.V.I. v. Turnbull*, 134 F. App'x 498, 500 (3d Cir. 2005) ("Considerations of ripeness are sufficiently important that [federal courts] are required to raise the issue sua sponte, even when the parties do not question [the court's] jurisdiction" (emphasis omitted) (citing *Felmeister v. Office of Att'y Ethics*, 856 F.2d 529, 535 (3d Cir. 1988)).

[9] As an initial matter, Plaintiffs provide no briefing on justiciability concerns and provide no legal basis to satisfy this Court that it may preemptively intervene to stop an event that may or may not occur. (*See generally* Pls.' Moving Br.; Pls.' Reply Br., ECF No. 25.) This is of particular note because Defendants expressly raised at least one justiciability concern in their opposition briefing. (*See* Defs.' Opp'n Br. 13, 21, ECF No. 16 (identifying standing and advisory opinions as justiciability concerns infecting Plaintiffs' Complaint); *see generally* Pls.' Reply Br. (failing to address any justiciability concerns posited by Defendants).)

*Driehaus*, 573 U.S. 149, 157-58 (2014) (alteration in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)). This injury must be an "invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *West v. Health Net of the Ne.*, 217 F.R.D. 163, 173 (D.N.J. 2003) (quoting *Lujan*, 504 U.S. at 560). For an injury to be imminent, as opposed to actual, it must be "certainly impending to constitute [an] injury in fact." *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). "'[A]llegations of possible future injury'" are not "certainly impending," and therefore, are not imminent. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 400 (2013) (emphasis omitted) (quoting *Whitmore*, 495 U.S. at 158).

Here, Plaintiffs do not allege any actual harm to justify the issuance of a TRO; instead, Plaintiffs in moving for preliminary injunctive relief appear to allege that the Challenged Plan is an imminent harm capable of constituting an injury-in-fact. (Pls.' Moving Br. 3 (contending that "Defendants are once again seeking to outrun" this Court where Defendants announced the Challenged Plan which includes the use of "a planned successor entity to LLT," which, if/when funded and if/when bankruptcy is declared in Texas, will cap resources available to Plaintiffs at $6.475 billion as opposed to nearly $30 billion); (*id.* at 8-9 (maintaining that Plaintiffs "would suffer irreparable harm should Defendants move forward with [the Challenged Plan] in [sic] yet another petition for Chapter 11, running away from the judges and courts that have heard their cases over a prolonged period").) Importantly, however, Plaintiffs' allegations of future harm are strictly contingent on future events that have not yet occurred, and in fact, may never occur. Plaintiffs, therefore, cannot establish a constitutionally-sufficient injury capable of justifying injunctive relief.

To be clear, the penultimate irreparable harm that Plaintiffs appear to allege in seeking a TRO is that "an unnecessary delay for a successive venue change motion *may* cost particular Plaintiffs the irreparable harm of lost opportunity." (Pls.' Moving Br. 11 (emphasis added).) In the current context, the simple use of "may" in the claimed injury destroys standing;[10] by definition, Plaintiffs' alleged injury is hypothetical. The Court's finding that Plaintiffs' allegations are strictly hypothetical is further supported by how heavily Plaintiffs rely on "if" and "could" in their briefing; such language use again shows that the harm Plaintiffs allege is contingent on events that have not, and may never, occur. *See West*, 217 F.R.D. at 173 (quoting *Lujan*, 504 U.S. at 560); *see, e.g.*, Pls.' Moving Br 2 (recognizing the speculative nature of their own alleged injury where Plaintiffs "move that the TRO/PI require that any bankruptcy of LLT–including its proposed successor 'Red River Talc LLC' under the Prepackaged Chapter 11 Plan of Reorganization–be filed in the District of New Jersey (*if filed at all*)" (emphasis added)).)

In sum, Plaintiffs' current Complaint is built entirely on a hypothetical. While Plaintiffs' concerns regarding further delay of this litigation or an alleged fourth fraudulent transfer are understandable, and while the Court recognizes that Defendants may publicly be considering another bankruptcy, it is not the Court's place to intervene in disputes that may never come to

---

[10] The Court notes that even if Plaintiffs could persuade the Court that an actual or imminent harm is present, the Court is skeptical that the harm Plaintiffs allege, i.e. lengthy litigation, can itself constitute a legally cognizable injury. Critically, Plaintiffs identify no case law to support such a conclusion. (*See generally* Pls.' Moving Br; Pls.' Reply Br.) Moreover, if the Court were to recognize further lengthening litigation as a sufficient injury to warrant a TRO, the Court risks setting a precedent wherein essentially any party engaged in protracted litigation could obtain the extreme remedy of preliminary injunctive relief whenever the opposing party files a motion.

pass.[11] Accordingly, Plaintiffs' motion for a TRO and a preliminary injunction is denied, and any claim predicated on any possible future transfer is dismissed without prejudice. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868))).

**B.** **Ripeness**

For the same reasons Plaintiffs plead no injury-in-fact capable of establishing Article III standing, the issues before the Court are not ripe. "The ripeness doctrine reflects a judgment that the disadvantages of a premature review that may prove too abstract or unnecessary ordinarily outweigh the additional costs of—even repetitive—postimplementation litigation." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 735 (1998). To evaluate ripeness, the Court must consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Texas v. United States*, 523 U.S. 296, 301 (1998) (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967)). A matter is not fit to be adjudicated if it is speculative whether "the problem . . . will ever need solving." *Id.*

As discussed fully above, all of Plaintiffs' allegations are rooted in speculation. Perhaps best exemplifying the lack of ripeness in the instant matter is the pending settlement proposal in

---

[11] Were the Court to decide the motion anyway, for example, the Court would violate another justiciability doctrine: the prohibition on issuing advisory opinions. As elucidated above, and flowing logically from the requirements for an injury-in-fact, in order to adjudicate an issue, the Court requires a "concrete legal issues, presented in actual cases, not abstractions." *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947). As discussed above, this motion is not yet based in actual or imminent unfolding events, and therefore the dispute before this Court is an abstraction. Accordingly, any decision by this Court on this issue would necessarily be an advisory opinion.

9

this action. (Long Form Notice *1.) To be clear, Plaintiffs append to their Complaint a notice that states the Challenged Plan "may only move forward if 75% of voters accept it." (*Id.*) That future identified contingency has not yet occurred, and therefore, if such contingency does not come to pass, it obviates the need for any court intervention. Plaintiffs' allegations therefore are strictly speculative, and this matter is not yet fit for adjudication. *See Texas*, 523 U.S. at 296.

### IV.    CONCLUSION

For the reasons outlined above, Plaintiffs have failed to persuade the Court it has subject-matter jurisdiction over this matter where Plaintiffs fail to establish standing and/or ripeness. Plaintiffs' Motion is therefore denied, and to the extent that any of Plaintiffs' claims are predicated on any alleged future conduct by Defendants, such claims are dismissed without prejudice for lack of standing. An Order consistent with this Memorandum Opinion will follow.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE