# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| REBECCA LOVE, D.D.S., SHARON MURPHY, WILLIAM A. HENRY, ALISHIA GAYLE DAVIS, AND BRANDI CARL, INDIVIDUALLY AND ON BEHALF OF A PROPOSED CLASS,<br><br>       Plaintiffs,<br><br>v.<br><br>LTL MANAGEMENT LLC F/K/A LTL MANAGEMENT, LLC; JOHNSON & JOHNSON; JOHNSON & JOHNSON HOLDCO (NA) INC; JANSSEN PHARMACEUTICALS, INC.; KENVUE INC.; J&J SERVICES, INC.; ROBERT WUESTHOFF; RICHARD DICKINSON; MICHELLE GOODRIDGE; JOAQUIN DUATO; THIBAUT MONGON; JOSEPH WOLK; LAURA MCFALLS; DUANE VAN ARSDALE; AND JOHN DOES 1-100,<br><br>       Defendants. | Case 3:24-cv-06320-MAS-RLS |

**DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................1

BACKGROUND ...................................................................................................3

    A.    Johnson's Baby Powder and the Talc Litigation ...............................3

    B.    2021 Corporate Restructuring .........................................................4

    C.    LTL's First Bankruptcy (*LTL I*) ......................................................5

    D.    LTL's Second Bankruptcy (*LTL II*) .................................................7

    E.    Continuing Settlement Efforts and Plaintiffs' Attacks on Them.........9

LEGAL STANDARD...........................................................................................13

ARGUMENT .....................................................................................................14

I.    The Complaint Should Be Dismissed Because Plaintiffs Fail to Allege Injury From the Three Transactions and, in any Event, Are Estopped From Doing So .................................................................................14

    A.    Plaintiffs Must Allege Injury to Show Standing and to State a Claim for Fraudulent Transfer, But Fail to Do So ...........................14

    B.    Plaintiffs Are Estopped from Alleging Injury from the Transactions.................................................................................18

    C.    Plaintiffs May Not Look to Alleged Tort-Litigation Delay to Show Injury From the Transactions ...............................................23v

II.    Plaintiffs Lack Any Viable Cause of Action Based on LTL's Bankruptcy Filings.........................................................................25

    A.    Plaintiffs May Not Collaterally Attack LTL's Bankruptcy Filings Through State-Law Causes of Action, Which Are Preempted.................................................................................26

    B.    Plaintiffs Fail to Plead Any Plausible Claims Premised On LTL's Bankruptcies .......................................................................29

III.    Plaintiffs Fail to State Viable Claims for Aiding and Abetting Actual Fraudulent Transfer........................................................................34

IV.    Plaintiffs Are Not Entitled to Declaratory Relief.......................................37

CONCLUSION ..................................................................................................39

CERTIFICATE OF SERVICE................................................................................41

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A/S Kreditt-Finans v. Cia Venetico De Navegacion S.A. of Panama*,
   560 F. Supp. 705 (E.D. Pa. 1983)......................................................................16

*Adams v. Yang*,
   475 N.J Super. 1 (App. Div. 2023).....................................................................23

*Adelphia Recovery Trust v. Bank of Am., N.A.*,
   390 B.R. 80 (S.D.N.Y. 2008).............................................................................17

*Am. Home Assurance Co. v. Liberty Mut. Ins. Co.*,
   475 F. Supp. 1169 (E.D. Pa. 1979)....................................................................39

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................13

*Astor Holdings, Inc. v. Roski*,
   325 F. Supp. 2d 251 (S.D.N.Y. 2003) ...............................................................27

*Atl. Richfield Co. v. Misty Prod., Inc.*,
   820 S.W.2d 414 (Tex. App. 1991) .....................................................................36

*August Uribe Fine ART, LLC v. SRL*,
   2023 U.S. Dist. LEXIS 51422 (D.N.J. Mar. 27, 2023) .....................................37

*Banco Popular N. Am. v. Gandi*,
   184 N.J. 161 (2005) ...........................................................................................35

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................13

*Bessette v. Avco Fin. Servs., Inc.*,
   230 F.3d 439 (1st Cir. 2000)..............................................................................28

*Burkhart v. Genworth Fin., Inc.*,
  250 A.3d 842 (Del. Ch. 2020).................................................................17, 18

*Butner v. United States*,
  440 U.S. 48 (1979)............................................................................26

*Bynum v. LLT Mgmt., LLC*,
  Case 3:24-cv-07065 (D.N.J. June 17, 2024)................................................12

*Casden v. Burns*,
  504 F. Supp. 2d 251 (N.D. Ohio 2007) .......................................................27

*Cent. Nat'l Gottesman Inc. v. Nakos Paper Prod. Inc.*,
  2019 WL 7670103 (W.D.N.C. Aug. 28, 2019)...............................................36

*Chemtex, LLC v. St. Anthony Enters., Inc.*,
  490 F. Supp. 2d 536 (S.D.N.Y. 2007) ........................................................16

*Coelho v. All. Mortg. Banking Corp.*,
  2007 U.S. Dist. LEXIS 39633 (D.N.J. May 10, 2007) ..............................2, 37

*Const. Party of Pa. v. Aichele*,
  757 F.3d 347 (3d Cir. 2014)................................................................13, 14

*Crystallex Int'l Corp. v. Petroleos De Venezuela, S.A.*,
  879 F.3d 79 (3d Cir. 2018)...................................................................35

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,
  784 F. Supp. 2d 508 (D.N.J. 2011)....................................................1, 10, 37

*E. Equip. & Servs. Corp. v. Factory Nat. Bank, Bennington*,
  236 F.3d 117 (2d Cir. 2001)...................................................................28

*Fid. Eatontown, LLC v. Excellency Enter., LLC*,
  2017 U.S. Dist. LEXIS 96368 (D.N.J. June 22, 2017) ...................................30

*Fid. Nat'l Title Ins. Co. v. Schroeder*,
  179 Cal. App. 4th 834 (2009).................................................................16

*Gastelum v. Pac. Heritage Inn of Chandler LLC*,
  2018 WL 3376964 (D. Ariz. July 11, 2018)....................................................14

*Gilchinsky v. Nat'l Westminster Bank N.J.*,
  159 N.J. 463 (1999) ...............................................................................15, 24

*Glannon v. Garrett & Assocs., Inc.*,
  261 B.R. 259 (D. Kan. 2001) ........................................................................28

*Gonzales v. Parks*,
  830 F.2d 1033 (9th Cir. 1987).......................................................................27

*Gov't Emps. Ins. Co. v. Elkholy*,
  2022 U.S. Dist. LEXIS 116240 (D.N.J. June 30, 2022)...................................38

*Haworth, Inc., v. Janumpally*,
  2018 WL 3978173 (E.D.N.C. Aug. 20, 2018)..................................................36

*In re Abatement Env't Res., Inc.*,
  102 F. App'x 272 (4th Cir. 2004)..................................................................24

*In re Bestwall LLC*,
  47 F.4th 233 (3d Cir. 2022).............................................................. 19, 20, 22

*In re Bestwall LLC*,
  71 F.4th 168 (4th Cir. 2023)..........................................................................33

*In re Fed.-Mogul Global Inc.*,
  684 F.3d 355 (3d Cir. 2012)....................................................................26, 33

*In re LTL Management, LLC*,
  637 B.R. 396 (Bankr. D.N.J. 2002)..........................................................*passim*

*In re LTL Mgmt., LLC*,
  64 F.4th 84 (3d Cir. 2023)......................................................................*passim*

*In re LTL Mgmt., LLC*,
  652 B.R. 433 (Bankr. D.N.J. 2023)............................................................9, 33

*In re Markus*,
78 F.4th 554 (2d Cir. 2023)........................................................................29

*In re Metro Commc'ns Inc.*,
115 B.R. 849 (W.D. Pa. 1990) ...................................................................23

*In re New Life Adult Med. Day Care Ctr., Inc.*,
2014 WL 6851258 (Bankr. D.N.J. Dec. 3, 2014) ............................................17

*In re Sharon Steel Corp.*,
100 B.R. 767 (Bankr. W.D. Pa. 1989)...............................................................21

*In re Silver State Holdings, Assignee-7901 Boulevard 26 LLC*,
2020 WL 7414434 (Bankr. N.D. Tex. Dec. 17, 2020)......................................35

*In re Steiner*,
613 B.R. 176 (8th Cir. BAP 2020) .................................................................29

*Koffman v. Osteoimplant Tech., Inc.*,
182 B.R. 115 (D. Md. 1995) .........................................................................27

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*,
337 F.3d 314 (3d Cir. 2003)..........................................................................22

*Laven v. Flanagan*,
695 F.Supp. 800 (D.N.J. 1988) ....................................................................37

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006)..........................................................................37

*LoBiondo v. Schwartz*,
199 N.J. 62 (2009) .......................................................................................30

*Love v. LTL Mgmt. LLC*,
Mem. Op. 9...................................................................................................3

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)......................................................................................18

*M&M Stone Co. v. Pennsylvania*,
   388 F. App'x 156 (3d Cir. 2010)......................................................................19

*Magten Asset Mgmt. Corp. v. Paul Hastings Janofsky & Walker LLP*,
   2007 WL 129003 (D. Del. Jan. 12, 2007) ......................................................35

*Maniscalco v. Brother Int'l Corp. (USA)*,
   627 F. Supp. 2d 494 (D.N.J. 2009)..................................................................39

*MSR Expl., Ltd. v. Meridian Oil, Inc.*,
   74 F.3d 910 (9th Cir. 1996).............................................................................28

*Nat'l Med. Imaging, LLC v. Ashland Funding LLC*,
   648 F. App'x. 251 (3d Cir. 2016).....................................................................19

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*,
   571 F.3d 299 (3d Cir. 2009).............................................................................21

*Official Committee of Asbestos Claimants of G-I Holdings, Inc. v.
   Heyman*,
   277 B.R. 20 (S.D.N.Y. 2003) .....................................................................18, 32

*Paradise Hotel Corp. v. Bank of Nova Scotia*,
   842 F.2d 47 (3d Cir. 1988)...............................................................................28

*Peloro v. United States*,
   488 F.3d 163 (3d Cir. 2007).............................................................................19

*Raymark Indus., Inc. v. Baron*,
   1997 WL 359333 (E.D. Pa. June 23, 1997)...............................................27, 28

*Residences at Bay Point Condo. Ass'n v. Chernoff Diamond & Co.,
   LLC*,
   2017 U.S. Dist. LEXIS 56451 (D.N.J. Apr. 13, 2017).....................................39

*Ron v. Ron*,
   836 F. App'x 192 (5th Cir. 2020).....................................................................35

*Rosenberg v. DVI Receivables XVII, LLC*,
   835 F.3d 414 (3d Cir. 2016)................................................................28

*SBK Catalogue P'ship v. Orion Pictures Corp.*,
   723 F. Supp. 1053 (D.N.J. 1989).......................................................31

*Shaikh v. Germadnig*,
   2023 U.S. Dist. LEXIS 120353 (D.N.J. July 13, 2023) ...................35

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)......................................................... 15, 17, 18

*TF Yachts, LLC v. Vandutch Prod. & Dev. B.V.*,
   2021 WL 672659 (D.N.J. Feb. 22, 2021) ..........................................16

*Toibb v. Radloff*,
   501 U.S. 157 (1991)...........................................................................27

*Travelers Prop. Cas. Co. of Am. v. Quickstuff, LLC*,
   2016 WL 7231605 (D.N.J. Dec. 14, 2016).........................................35

*Turner v. Wong*,
   363 N.J. Super. 186 (App. Div. 2003)................................................30

*Unimaven, Inc. v. Tex. TR, LLC*,
   2020 U.S. Dist. LEXIS 42433 (D.N.J. Mar. 9, 2020) .......................30

*United States v. Medco Health Sys., Inc.*,
   2014 WL 4798637 (D.N.J. Sept. 26, 2014) ........................................36

*WBDH-BC Holdings Ltd. v. Varsatel Corp.*,
   2022 WL 3701452 (S.D. Fla. June 16, 2022)......................................36

*Westmoreland Hum. Opportunities, Inc. v. Walsh*,
   246 F.3d 233 (3d Cir. 2001)...............................................................21

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995)...........................................................................38

**CONSTITUTIONAL AND STATUTORY AUTHORITIES**

U.S. Const. Article I, § 8................................................................................26

11 U.S.C. § 101 .............................................................................................21

11 U.S.C. § 105 .............................................................................................29

11 U.S.C. § 109 .............................................................................................26

11 U.S.C. § 303 .............................................................................................28

11 U.S.C. § 349 .............................................................................................29

11 U.S.C. § 524 .......................................................................................10, 33

11 U.S.C. § 1109............................................................................................21

11 U.S.C. § 1112............................................................................................29

N.J. Stat. Ann. § 25:2-29...............................................................................16

N.J. Stat. Ann. § 25:2-30...............................................................................16

**OTHER AUTHORITIES**

52 Am. Jur. 2d *Malicious Prosecution* .......................................................30

Anthony J. Casey & Joshua C. Macey*, In Defense of Chapter 11 for Mass Torts*, 90 U. Chi. L. Rev. 973 (2023) .....................................................32

Fed. R. Civ. P. 9............................................................................................37

Fed. R. Civ. P. 12..........................................................................................13

*Motion for Temporary Restraining Order Filed in Lawsuit Against Johnson & Johnson* (June 12, 2024) ...............................................................12

Press Release, *Attorneys For Women Harmed By Johnson & Johnson's Talcum Powder Resist Company's Attempt To Stuff Ballot Box In Unprecedented Third Attempted Bankruptcy* (May 1, 2024) ................................................................................................12

Press Release, *Plaintiffs in J&J Talc Cancer Litigation File Class Action Complaint for Fraudulent Conveyance* (May 22, 2024)........................12

### <u>INTRODUCTION</u>

After twice joining motions to dismiss the bankruptcy filings of Defendant LTL[1] on the ground that LTL *was not financially distressed*, Plaintiffs now challenge three corporate transactions (from October 2021, January 2023, and April 2023) that allegedly "stripped" assets away from LTL. But Plaintiffs do not now allege that any of the transactions left LTL unable to pay its talc claims. Nor could they, given their past arguments and resulting court decisions determining that, after taking into account the transactions, LTL has more than sufficient assets to cover those claims.

The facially meritless nature of the claims is telling, as the Complaint is not really about the three referenced transactions. Rather, it is a misguided effort by a small group of plaintiff law firms to thwart the ongoing solicitation of a prepackaged Chapter 11 plan, proposed by LTL to comprehensively resolve current and future ovarian-and-gynecological cancer claims in the United States. These firms have long been opposed to *any* bankruptcy resolution of LTL's talc claims, placing their own financial interests in securing a resolution outside of bankruptcy over the interests of their clients. They are now pulling out all the stops to undercut the plan process, by first filing the Complaint, and then by (i) seeking injunctive relief to predetermine the venue of any future prepackaged bankruptcy case to

---

[1] This Motion adopts, as applicable, the defined terms used in the Complaint.

- 1 -

implement the plan (which this Court properly rejected), (ii) filing a putative "medical monitoring" class action that is not viable under settled law of this Circuit, and (iii) spearheading a smear campaign designed to deprive the talc claimants of the opportunity to determine for themselves whether to accept the plan. This conduct is the pertinent "abuse" that should be foreclosed—starting with the dismissal of the Complaint in its entirety—for the following reasons.

*First,* Plaintiffs do not allege harm from any of the transactions at issue and, for that reason alone, have no Article III standing and fail to state a claim. In addition, Plaintiffs are estopped from alleging harm because they advanced and prevailed on opposite positions in the bankruptcy cases before the Third Circuit and the Bankruptcy Court. In *LTL I*, the Third Circuit, based on Plaintiffs' arguments, found that LTL was not in financial distress because it could "meet comfortably" *all* of its talc liabilities, current *and future*, even after the so-called "Divisive Merger Fraud." Compl. ¶ 10 (defining this term). Likewise, in *LTL II*, based on Plaintiffs' arguments, the Bankruptcy Court reached the same conclusions, finding that LTL could meet the "worst-case" scenario of LTL's talc liabilities, current *and future*, even after the alleged "Asset Stripping" and "Bait-and-Switch" transactions. *Id.* (defining these terms).

*Second,* lacking any harm from the three transactions, Plaintiffs attack LTL's two prior bankruptcy filings as purportedly serving to "hinder, delay, and defraud"

- 2 -

claimants. As a threshold matter, however, any claims premised on LTL's bankruptcy filings are preempted, as the exclusive forum for addressing alleged abuses of the Bankruptcy Code—including any alleged "malicious and bad faith filing" (*id.* ¶ 360)—is the bankruptcy court. Nor are such claims plausible.

**Third,** Plaintiffs fail to assert any viable claims for aiding and abetting actual fraudulent transfers. Their failure to plead a valid *underlying* claim dooms aiding-and-abetting as well, and aiding and abetting a fraudulent transfer is not a recognized cause of action under any potentially applicable state law.

**Finally,** Plaintiffs' requests for declaratory relief are duplicative of their other (defective) claims and, therefore, are both not warranted and baseless.

Thus, each of the Complaint's ten counts should be dismissed to the extent not already dismissed by the Court's order dated June 28, 2024, which dismissed "any claim predicated on any possible future transfer." *Love v. LTL Mgmt. LLC*, Mem. Op. 9 (Dkt. 31) ("*TRO Denial Op.*").

## BACKGROUND

### A.    Johnson's Baby Powder and the Talc Litigation

J&J began selling Johnson's Baby Powder in 1894. *In re LTL Mgmt., LLC*, 64 F.4th 84, 93 (3d Cir. 2023) ("*3d Cir. Op.*"). Until 2016, this product triggered little litigation. *Id.* at 94. But as was only recently discovered, the mass tort plaintiffs bar then secured litigation financing to foment talc litigation.

Consequently, by October 2021, when LTL filed its first bankruptcy case, over 38,000 ovarian cancer cases (most consolidated in New Jersey MDL 2738) and over 400 mesothelioma actions were pending. *Id.* In this very short period of time, the former Johnson & Johnson Consumer Inc. ("Old JJCI") had already paid out approximately $3.5 billion in talc-related verdicts and settlements and incurred nearly $1 billion in defense costs. *Id.* at 94. Talc costs alone forced Old JJCI into a loss position and, indeed, caused J&J's Consumer Health business segment to deteriorate from a $2.1 billion profit in 2019 to a $1.1 billion loss in 2020. *Id.*

### B. 2021 Corporate Restructuring

In October 2021, Old JJCI underwent a corporate restructuring (the "2021 Corporate Restructuring"), which involved a divisional merger creating two new entities, LTL and New JJCI. *Id.* at 95-96. The divisional merger allocated essentially all of Old JJCI's talc-related liabilities to LTL and provided LTL with a funding agreement from New JJCI and J&J (the "2021 Funding Agreement"). *Id.* at 96. The purpose of this 2021 Funding Agreement was to facilitate a resolution of talc claims through a chapter 11 filing by LTL. *First Day Decl. of John Kim* ¶ 32, *LTL II* Dkt. 4 ("*LTL II* Kim Decl."); *see* Compl. ¶ 51 n.5 (citing *LTL II* Kim Decl.). It obligated New JJCI and J&J, on a joint and several basis, to provide funding up to the value of New JJCI (then estimated at $61.5 billion) for, among other things, (i) the costs of LTL's chapter 11 case and (ii) a trust to satisfy current and future

talc claims. *Id.*; *3d Cir. Op.*, 64 F.4th at 96-97. As such, LTL had access to at least as much value to pay talc claims as Old JJCI had prior to the 2021 Corporate Restructuring.

### C.    LTL's First Bankruptcy (*LTL I*)

LTL thereafter filed a chapter 11 petition, and the Official Committee of Talc Claimants (the "TCC") and various other parties (collectively, "Movants") moved to dismiss the case. *Id.* at 98. Movants principally argued that (a) the bankruptcy lacked a "valid reorganization purpose" (*In re LTL Management, LLC*, 637 B.R. 396, 404, 407 (Bankr. D.N.J. 2002)) ("*LTL I Bk. Ct. MTD Op.*"); (b) LTL "was not in serious financial distress" (*id.* at 420); (c) LTL's "creation through the pre-petition restructuring mechanism" was a "litigation tactic" designed "to force talc claimants to face delay and to secure a 'bankruptcy discount'" (*id.* at 404, 422-28); and (d) New JJCI and J&J should not be permitted to obtain the benefits of bankruptcy without bearing its attendant burdens (*id.* at 424-25).

After a five-day trial, the Bankruptcy Court denied the motions to dismiss, finding that LTL's "efforts to address the financially draining mass tort exposure through a bankruptcy is wholly consistent with the aims of the Bankruptcy Code." *Id.* at 403, 408. Citing the billions spent to date and billions more likely required in the future to resolve tens of thousands of claims, the potential for blockbuster verdicts, and the impact of the talc litigation on Old JJCI, the Bankruptcy Court

also found that LTL was sufficiently financially distressed to warrant resort to chapter 11. *Id.* at 417-21. Finally, the court rejected Movants' contention that the "use of the Texas divisional merger statute" prior to the filing—the first part of the so-called "Texas Two-Step"—was designed to "hinder," "delay," and "prejudice" claimants (*id.* at 422) and instead credited the reasons LTL gave for why Old JJCI engaged in a divisional merger (*id.* at 421-29). The Movants appealed, and the Third Circuit accepted a direct appeal. *3d Cir. Op.*, 64 F.4th at 99.

On January 30, 2023, the Third Circuit reversed the Bankruptcy Court, ordering dismissal of LTL's bankruptcy case. The key ruling was that "a debtor who does not suffer from financial distress cannot demonstrate its Chapter 11 petition serves a valid bankruptcy purpose." *Id.* at 101, 106.

The panel focused, first, on LTL's "very valuable" rights under the 2021 Funding Agreement. "Most important," the panel found, was that "the payment right gave LTL direct access to J&J's exceptionally strong balance sheet." *Id.* at 106. The panel "c[ould] not accept" the Bankruptcy Court's conclusion that LTL's talc liabilities "far exceed [LTL's] capacity to satisfy [them]." Rather, it concluded, "LTL did not have any likely need in the present or the near-term, or even in the long-term, to exhaust its funding rights to pay talc liabilities." *Id.* at 108. The panel thus found that LTL "was highly solvent with access to cash to meet comfortably its liabilities as they came due for the foreseeable future." *Id.*

- 6 -

### D.    LTL's Second Bankruptcy (*LTL II*)

After the Third Circuit's ruling but before it issued its mandate, LTL, J&J, and some 17 plaintiff law firms reached agreement on a bankruptcy resolution. *In re LTL Mgmt., LLC*, 652 B.R. 433, 439 (Bankr. D.N.J. 2023) ("*LTL II Bk. Ct. MTD Op.*"). The 17 firms formed an Ad Hoc Committee of Supporting Counsel ("AHC"). *Id.* Once the Bankruptcy Court on remand dismissed LTL's first case, LTL filed its second one, in April 2023. As the Bankruptcy Court found, "the impetus" for the second case "was a proposal by law firms representing nearly 60,000 talc claimants for a bankruptcy resolution of the Debtor's talc liability." *Id.*

To effectuate the proposed resolution through the second case, LTL entered into a new funding arrangements. New arrangements were required because J&J had concluded that its co-obligation under the 2021 Funding Agreement was no longer enforceable because its purpose had been frustrated. That is, (i) the purpose of J&J's backstop of the 2021 Funding Agreement was to *facilitate* LTL's goal of resolving all current and future talc claims *in a chapter 11 proceeding* (*LTL II* Kim Decl. ¶ 78), yet (ii) the Third Circuit had determined it had the opposite effect. Thus, LTL and HoldCo entered into a new funding agreement without J&J (which was otherwise essentially identical to the 2021 Funding Agreement) (the "2023 Funding Agreement") and LTL, HoldCo, and J&J entered into a separate agreement under which J&J would provide financial support upon confirmation of

- 7 -

a plan in bankruptcy. *Id.*[2]

The Official Committee of Talc Claimants in the second case (the "TCC 2") and others again moved to dismiss, once again pointing to LTL's funding arrangements as barring LTL's access to bankruptcy because they afforded it more funding than required to satisfy its talc liabilities. The TCC 2 thus argued that (a) "LTL cannot meet its burden to show that it is in financial distress"; (b) "LTL's unsuccessful attempt to manufacture financial distress cannot create a good faith filing"; and (c) "LTL's latest bankruptcy filing displays other indicia of bad faith." *LTL II* Dkt. 286. After discovery, the Bankruptcy Court held a four-day trial. *LTL II Bk. Ct. MTD Op.*, 652 B.R. at 441-42. This time the Bankruptcy Court granted the motions. While the court reiterated its view that bankruptcy offers an appropriate means to resolve mass tort liability, it held that the Third Circuit's opinion required it to "start, and stay," with the issue of financial distress. *Id.* at 442-43.

In rendering its decision, the Bankruptcy Court rejected the challenges the TCC 2 raised about the spin-off of the Consumer Health business. J&J had long contemplated spinning off its Consumer Health business, and in November 2021

---

[2] Plaintiffs' allegation that "[t]he 2023 Funding Agreement was only available in bankruptcy," Compl. ¶ 59, is not accurate. As stated in paragraph 82 of Mr. Kim's First Day Declaration for LTL II (the source inaccurately cited by the Complaint), it is J&J's support that is available only in bankruptcy. *See LTL II* Kim Decl. ¶ 80 (explaining how 2023 Funding Agreement requires HoldCo to provide funding, including "at any time when there is no bankruptcy case").

(shortly after LTL's first bankruptcy filing) had announced its plans to do so. *Id.* at 438.  In 2022 and January 2023, while the Third Circuit appeal remained pending, it completed this transfer of its Consumer Health business to Kenvue, Inc. After reviewing evidence on the Consumer Health spin-off, the Bankruptcy Court found that the "evidence presented" showed "no relationship" between the spin-off and either bankruptcy. *Id.*

Ultimately, the Bankruptcy Court found that, even after the Consumer Health spin-off and modifications to LTL's funding arrangements, LTL "was solvent and—with assistance from HoldCo and the 2023 Funding Agreement—was able to satisfy its liabilities." *Id.* at 445. It found LTL's access to HoldCo's value (approximately $29.9 billion, or $22.3 billion in a forced liquidation) more than sufficient to pay the total projected costs to defend and resolve current *and future* talc liabilities, even when "extend[ed] out for decades" and under "worst-case scenarios." *Id*. at 447.

The court closed by praising "the dogged efforts of the AHC, Debtor and other parties," which had paved the "foundation for a fair, efficient, and expeditious settlement." *Id.* at 455. It urged "the parties to build upon" this "remarkable progress" in "reaching a viable global settlement." *Id.* at 455.

### E.    Continuing Settlement Efforts and Plaintiffs' Attacks on Them

After dismissal of the second case, LTL and J&J continued negotiating with

- 9 -

counsel for tens of thousands of talc claimants, state attorneys general, and talc suppliers. As a result:

- They have reached settlement agreements covering 95% of *mesothelioma* talc lawsuits filed to date.

- They have reached an agreement in principle to resolve *consumer-prosecution claims* brought or being investigated by state attorney generals.

- They have reached an agreement in principle to resolve *indemnification disputes with talc suppliers* (the Imerys and Cyprus entities).

- They have reached agreement with counsel for a substantial majority of claimants asserting *ovarian cancer- and gynecological-related talc claims* on a prepackaged plan of reorganization to resolve all such current and future claims (the "Channeled Talc Personal Injury Claims").

The *Prepackaged Chapter 11 Plan of Reorganization of the Debtor* is attached to a Disclosure Statement dated June 3, 2024 (as amended in the Plan Supplement dated June 28, the "Plan"). The Plan proposes to establish a trust funded by $8 billion payable over 25 years. LTL began solicitation of the Plan on June 6, 2024; voting is scheduled to conclude on July 26, 2024.

The Plan will move forward only if LTL determines it has received the requisite 75% vote in favor (*cf.* 11 U.S.C. § 524(g) (setting 75% threshold)). If so, HoldCo and LTL may implement a corporate restructuring (the "Prepetition Corporate Restructuring") to effectuate the Plan. Disclosure Statement at iii, 30-43. This would result in three new limited liability companies: Red River Talc LLC

- 10 -

("Red River"), Pecos River Talc LLC ("Pecos River"), and J&J Holdco (NA) LLC. *Id.* at 30-40. Red River would be responsible for Channeled Talc Personal Injury Claims, but not mesothelioma, lung cancer, governmental, or Canadian claims and demands; Pecos River would be responsible for those. *Id.* The 2023 Funding Agreement would no longer exist (given the merger of LTL and HoldCo), and J&J HoldCo (NA) LLC would enter into new, separate funding arrangements with Red River and Pecos River. As to Red River, the terms of the funding arrangement, as well as copies of the new agreements, are included in the Disclosure Statement. These agreements will ensure that Red River has sufficient resources to pay expenses and fund the Plan. *Id.* at 39-40. Once formed, Red River may file a voluntary chapter 11 petition in a Texas bankruptcy court or other appropriate venue to implement the Plan. *Id.* at iii. The vote of claimants will guide LTL's decision whether the restructuring and a bankruptcy will proceed.

Plaintiffs' counsel immediately issued press releases decrying the Plan as an attempt to "cheat" victims through a "shocking new legal strategy" that "could strip consumers of their constitutional rights and allow major corporations to avoid responsibility for the harm caused by their defective products."[3] Three weeks later,

---

[3] *See, e.g.*, Press Release, *Attorneys For Women Harmed By Johnson & Johnson's Talcum Powder Resist Company's Attempt To Stuff Ballot Box In Unprecedented Third Attempted Bankruptcy* (May 1, 2024), available at https://www.beasleyallen.com/wp-content/uploads/2024-05-01-Press-Release-PDF-Talc.pdf.

these firms filed this action and immediately broadcast the Complaint to the public.[4] And three weeks after that, the firms sought a temporary restraining order and preliminary injunction enjoining LTL or Red River from filing bankruptcy in any District other than this one and from amending the 2023 Funding Agreement without prior notice. Dkt. 6. The firms once again immediately broadcast their efforts.[5] A few days later, the same set of law firms filed another putative class action complaint against the Corporate Defendants. The action seeks to bring claims on behalf of a subclass of *future* claimants (not yet diagnosed with cancer) allegedly exposed to cosmetic talc products. *See Bynum v. LLT Mgmt., LLC*, Case 3:24-cv-07065 (D.N.J. June 17, 2024).

On June 28, 2024, this Court denied Plaintiffs' motion for a temporary restraining order and preliminary injunction, concluding that, under the requirements of Article III of the Constitution for standing and ripeness, it lacked subject-matter jurisdiction. *TRO Denial Op.* Accordingly, the Court also dismissed, for lack of standing, Plaintiffs' claims "to the extent that any … are predicated on

---

[4] *See, e.g.*, Press Release, *Plaintiffs in J&J Talc Cancer Litigation File Class Action Complaint for Fraudulent Conveyance* (May 22, 2024), available at https://levinlaw.com/newsroom/talc-cancer-plaintiffs-file-class-action-complaint-against-johnson-and-johnson-for-fraudulent-conveyance.

[5] *See, e.g.*, Bailey Glasser Press Release, *Motion for Temporary Restraining Order Filed in Lawsuit Against Johnson & Johnson* (June 12, 2024), available at https://www.baileyglasser.com/news-motion-for-temporary-restraining-order-filed-in-suit-against-johnson-and-johnson.

any alleged future conduct by Defendants." *Id.* at 10. On July 5, 2024, after appealing the Court's decision, Plaintiffs filed an *Emergency Motion for Injunction Pending Appeal or, Alternatively, to Expedite Appeal* asking the Third Circuit to enjoin LTL from filing bankruptcy outside this District pending appeal.

## **LEGAL STANDARD**

"To survive a motion to dismiss" under Civil Rule 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals" of the elements, "conclusory statements" of fact, and mere "legal conclusions" "do not suffice." *Iqbal*, 556 U.S. at 678. The actual factual allegations must "raise a right to relief above the speculative level," making the claim not merely "conceivable[,]" but "plausible." *Twombly*, 550 U.S. at 555, 570.

In deciding a Rule 12(b)(1) motion to dismiss, the court first determines whether the movant has presented a "facial" or "factual" attack to its jurisdiction, or both. *See Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). "In reviewing a facial attack, 'the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'" *Aichele*, 757 F.3d at 358 (citation omitted). In reviewing a factual attack, the court "may weigh and 'consider evidence outside

- 13 -

the pleadings.'" *Id.* (citation omitted). "Reliance on the legal principle of collateral estoppel is not the same thing as presenting extrinsic evidence and seeking a factual determination." *Gastelum v. Pac. Heritage Inn of Chandler LLC*, 2018 WL 3376964, at *2 n.1 (D. Ariz. July 11, 2018) (treating 12(b)(1) motion as facial attack when defendant relied on allegations in complaint and issue preclusion).

## ARGUMENT

### I.    The Complaint Should Be Dismissed Because Plaintiffs Fail to Allege Injury From the Three Transactions and, in any Event, Are Estopped From Doing So.

Although Plaintiffs allege that the divisional merger, the Consumer spin-off, and the revision of the funding arrangements were each fraudulent transfers, their Complaint omits one key element for all three—any allegation of injury. It admits that LTL still has access to $30 billion but never alleges that $30 billion is or could be insufficient to satisfy the putative class's unliquidated claims. *See* Compl. ¶¶ 10-11, 59, 260. With no alleged injury, Plaintiffs' claims fail two times over—they fail to show standing and they fail to state a claim. This omission, although glaring, has an explanation: Plaintiffs defeated LTL's first and second bankruptcy cases by arguing there is *no risk* LTL could run short of funds. They are estopped from taking the opposite position now.

### A.    Plaintiffs Must Allege Injury to Show Standing and to State a Claim for Fraudulent Transfer, But Fail to Do So.

Article III of the Constitution limits federal courts to deciding "cases" and

- 14 -

"controversies." Standing ensures they do not exceed that authority. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To have standing, the plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* The "foremost" element is injury. *Id.* The plaintiff must show "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent." *Id.* at 339 (citation omitted). A "concrete" injury "must actually exist." *Id.* at 340. A "risk of real harm" may suffice, if the risk is "material." *Id.* at 341-42.

Similarly, in a fraudulent-transfer suit, a plaintiff must have an injury, because the point of fraudulent-transfer laws is to protect creditor recovery. *Gilchinsky v. Nat'l Westminster Bank N.J.*, 159 N.J. 463, 475-76 (1999) (citation omitted). This assumes the creditor has or will have grounds to "reach" the debtor's "property." *Id.* Such laws prevent a debtor from removing property from "the jaws of *execution*," by bringing it back "within the ambit of *collection*." *Id.* (citation omitted; emphases added). There is no fraudulent transfer if a transfer does not affect collection.

The primary remedy for fraudulent transfer is correspondingly limited by this purpose. Specifically, a creditor may obtain "avoidance of the transfer or obligation *to the extent necessary to satisfy the creditor's claim*." N.J. Stat. Ann.

§ 25:2-29(a)(1) (emphasis added). Likewise, a creditor's judgment is limited to "the value of the asset transferred … *or the amount necessary to satisfy the creditor's claim, whichever is less*." N.J. Stat. Ann. § 25:2-30(b) (emphasis added).[6]

Courts reject efforts by creditors to use fraudulent-transfer claims "to invalidate transactions that cause them no injury." *A/S Kreditt-Finans v. Cia Venetico De Navegacion S.A. of Panama*, 560 F. Supp. 705, 711 (E.D. Pa. 1983) (barring junior creditor from challenging transfer to senior creditor, because senior creditor was owed more than property was worth, so junior creditor had no right to any value in the property); *Chemtex*, 490 F. Supp. 2d at 542 (similar); *TF Yachts, LLC v. Vandutch Prod. & Dev. B.V.*, 2021 WL 672659, at *7 (D.N.J. Feb. 22, 2021) (barring challenge to transfer of property in which debtor had no interest and so which would not have been available to creditors); *see also Adelphia Recovery Trust v. Bank of Am., N.A.*, 390 B.R. 80, 96-97 (S.D.N.Y. 2008) (finding no standing on a fraudulent-transfer claim where creditors would not benefit from any recovery); *In re New Life Adult Med. Day Care Ctr., Inc.*, 2014 WL 6851258, at *6

---

[6] *See also Fid. Nat'l Title Ins. Co. v. Schroeder*, 179 Cal. App. 4th 834, 841 (2009) ("[T]he question of whether any *injury* occurred to the creditor as a result of the transfer … is a necessary element for relief under the UFTA. … In other words, prejudice to the plaintiff is essential."); *Chemtex, LLC v. St. Anthony Enters., Inc.*, 490 F. Supp. 2d 536, 542 (S.D.N.Y. 2007) ("To challenge a conveyance as fraudulent, a plaintiff must suffer prejudice or injury as a result of the conveyance at issue.").

(Bankr. D.N.J. Dec. 3, 2014) (granting summary judgment on fraudulent-transfer action under Bankruptcy Code because creditors would be paid in full).

Here, Plaintiffs never allege that any of the three transactions they challenge caused or is materially likely to cause them any injury. The fundamental deficiency, and the great oddity of the Complaint, is that Plaintiffs try to get away with telling only half of a story, discussing LTL's assets but not its liabilities. The Complaint alleges that, after all three transfers, LTL had access to *$29.9 billion*. *See* Compl. ¶ 10, 59. But if that amount suffices to cover the potential liabilities to Plaintiffs, then the transfers had no effect on them, and they have no basis to sue. Yet the Complaint never alleges even an estimate of LTL's liabilities, much less an estimate exceeding that amount.

Because Plaintiffs do not allege that LTL will need the transferred property to satisfy their unliquidated claims, they fail to allege any "concrete" injury or "risk of real harm," and thus also fail to state a claim. *Spokeo*, 578 U.S. at 341; *see Burkhart v. Genworth Fin., Inc.*, 250 A.3d 842, 853-54 (Del. Ch. 2020) (recognizing that a mere technical violation of the UFTA is not enough to "confer standing"). And without injury, there is also nothing to be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

The defect in the Complaint is plain when compared with other suits by creditors holding unliquidated claims. In *Burkhart*, holders of long-term-care

insurance policies sued the underwriter for alleged fraudulent transfers via dividends. 250 A.3d at 842. The Delaware Chancery Court, applying *Spokeo*, concluded that plaintiffs needed to allege at least a "material risk of harm." *Id.* at 853-54. They had done so because they alleged the dividends were "an intentional effort to avoid an intact contractual obligation to pay Plaintiffs billions of dollars," by leaving the underwriter depleted of assets. *Id.* at 854-55. Likewise, in *Official Committee of Asbestos Claimants of G-I Holdings, Inc. v. Heyman*, 277 B.R. 20, 33 (S.D.N.Y. 2003), the court found standing because, after certain distributions, the likely amount of asbestos claims outstripped debtor's remaining reserves more than four-fold.

In sum, when creditors hold unliquidated claims, they must plausibly allege, at minimum, a "material risk" of nonpayment from the challenged transfers. *Spokeo*, 578 U.S. at 342. Here, Plaintiffs conspicuously fail to do so.[7]

### B.      Plaintiffs Are Estopped from Alleging Injury from the Transactions.

Plaintiffs are estopped from alleging injury, due to both issue preclusion and judicial estoppel.

---

[7] The alleged "badges of fraud" concerning the three transactions (*see* Compl. ¶¶ 296, 326, 328, 342)—which concern innocuous facts and support no inference of fraudulent intent in any event (*see* Dkt. 16, at 20)—do not allow Plaintiffs to escape dismissal for lack of harm.

### 1.    Issue preclusion

Issue preclusion "prevents parties from relitigating an issue that has already been actually litigated." *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007). It "may be raised in a motion to dismiss." *M&M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010). It applies when: "(1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question." *In re Bestwall LLC*, 47 F.4th 233, 243 (3d Cir. 2022). The Third Circuit's finding that LTL was not in "financial distress" after the transactions preceding *LTL I*, and the Bankruptcy Court's similar findings in *LTL II*, preclude Plaintiffs from relitigating the issue here.

***The issues are identical.*** Issues are identical when they "are in substance the same as those resolved in the previous litigation." *Nat'l Med. Imaging, LLC v. Ashland Funding LLC*, 648 F. App'x. 251, 256 (3d Cir. 2016) (cleaned up). The issue here is whether there is any material risk LTL will be unable to pay current talc claims. In *LTL I* and *LTL II*, the talc committees argued that LTL was not in "financial distress" when it filed either case, because there was no risk it would be unable to satisfy current and future claims. *See Br. for Off. Comm. of Talc Claimants*, No. 22-2003 (3d Cir. June 30, 2022), Dkt. 46, at 42; *Mot. to Dismiss of*

- 19 -

*Off. Comm. of Talc Claimants*, No. 23-12825 (Bankr. D.N.J. ), Dkt. 286-1, at 27.

In its opinion dismissing *LTL I*, the Third Circuit agreed. It found LTL "was highly solvent with access to cash to meet comfortably its liabilities as they came due for the foreseeable future" and "did not have any likely need in the present or the near-term, or even in the long-term, to exhaust its funding rights to pay talc liabilities." *3d Cir. Op.*, 64 F. 4th at 108. Likewise, in dismissing *LTL II*, the Bankruptcy Court found that, "[e]ven assuming total talc liability closer to [a] worst-case scenario figure," LTL "still will not have exhausted the total value of the 2023 Funding Agreement." *See LTL II Bk. Ct. MTD Op.*, 652 B.R. at 447.

Courts have twice found no risk of inability to pay—even considering both current *and future* claimants—including, most recently in *LTL II*, after *all three* of the transactions the Complaint challenges.

**The judgments are final.** "An order is treated as final for preclusion purposes as long as it is sufficiently firm to be accorded conclusive effect." *Bestwall*, 47 F.4th at 243-44 (cleaned up). Here, the first bankruptcy is fully concluded. And the second has been dismissed, in an order that was indisputably final so as to be appealable as of right.

**Plaintiffs were parties and in privity.** Plaintiffs satisfy this element two times over. *First*, as current talc claimants, they are "creditors" of LTL under the Bankruptcy Code (11 U.S.C. § 101(5)&(10)) and thus were "*parties in interest*" in

- 20 -

both *LTL I* and *LTL II*, authorized to "raise" and "appear" and "be heard on any issue." 11 U.S.C. § 1109(b) (emphasis added); *In re Sharon Steel Corp.*, 100 B.R. 767, 784 (Bankr. W.D. Pa. 1989) ("issue preclusion estops a party or parties in interest from relitigating legal or factual issues that have been fully litigated in a prior proceeding, whether that prior action involved the same claim or not"). Indeed, four of the five named Plaintiffs here (Love, Henry, Davis, and Carl) were members of the official committees appointed to represent talc claimants in both cases, which successfully moved to dismiss the cases. *See LTL I*, Dkt. 965-1; *LTL II*, Dkt. 162.

*Second*, all the Plaintiffs also were in *privity* with the official committees in *LTL I* and *LTL II*. Privity exists when "the nonparty was 'adequately represented'" by a party to the earlier action. *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 312 (3d Cir. 2009). The Bankruptcy Code mandates creation of an official committee to represent unsecured creditors, to whom the committee owes a "fiduciary obligation." *Westmoreland Hum. Opportunities, Inc. v. Walsh*, 246 F.3d 233, 257-58 (3d Cir. 2001) (citing 11 U.S.C. §§ 1102, 1103). The talc committees sought and obtained dismissals of the LTL bankruptcies on behalf of all current talc claimants, including Plaintiffs.

***Plaintiffs had a full and fair opportunity to litigate the issue.*** The dismissal proceedings in *LTL I* and *LTL II* afforded Plaintiffs—individually, as members of

- 21 -

the talc committees, and as represented by the talc committees—a "full and fair opportunity to litigate the issue." *Bestwall*, 47 F.4th at 243. In both cases, the parties took months of discovery (including expert discovery), participated in a multi-day trial, and briefed an appeal before the Third Circuit.

Plaintiffs are bound by those prior resolutions and may not relitigate them here.

### 2.    Judicial estoppel

Under judicial estoppel, "absent any good explanation, a party should not be allowed to *gain an advantage* by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 319 (3d Cir. 2003) (emphasis added). Courts generally consider three things: (1) "the party to be estopped must have taken two positions that are *irreconcilably inconsistent*"; (2) the party must have "*changed his or her position in bad faith*—i.e., with intent to play fast and loose with the court"; and (3) "a district court may not employ judicial estoppel unless it is tailored to address the harm identified and *no lesser sanction would adequately remedy the damage* done by the litigant's misconduct." *Id.* at 319-20 (cleaned up).

The Plaintiffs satisfy each of these requirements. ***First***, having already won dismissal (twice) by asserting that LTL had no risk of lacking sufficient funds to

- 22 -

satisfy its talc liability, Plaintiffs cannot now press the opposite argument. Because of the issue on which the Plaintiffs "prevail[ed]" in *LTL I* and *LTL II,* they are now "stuck" with LTL's ability to pay "in all later litigation growing out of the same events." *Adams v. Yang*, 475 N.J Super. 1, 9 (App. Div. 2023); *In re Metro Commc'ns Inc.*, 115 B.R. 849, 856 (W.D. Pa. 1990) ("If a party prevails in Suit #1 by representing that proposition A is true, that party is stuck with proposition A in any later litigation involving proposition A.") (citation omitted). ***Second,*** any allegations of harm by the Plaintiffs constitute bad faith. As members of the official committees in *LTL I* and *LTL II*, they cannot ignore the successful arguments raised by the committees they were on and the glaring inconsistency with any allegations of harm here. ***Third,*** dismissal of the Complaint based on judicial estoppel would be tailored to address the harm Defendants have identified (Plaintiffs' taking positions wholly inconsistent with their prior positions, to pursue this litigation), and no lesser sanction than dismissal would be adequate.

> C.   **Plaintiffs May Not Look to Alleged Tort-Litigation Delay to Show Injury From the Transactions.**

Without any injury from the transactions, Plaintiffs point instead to "delay" in their tort cases against LTL and J&J allegedly caused by LTL's bankruptcies. Putting aside that resolution in the tort system for most claimants is *slower* than resolution through bankruptcy (*infra*, Arg. II.B), this alleged injury cannot salvage their fraudulent-transfer claims. Any such delay is attributable *to the bankruptcies*,

not the transfers. And delay in tort proceedings to liquidate disputed claims is not the kind of "delay" that fraudulent-transfer law addresses.

*First,* the *transactions* did not cause delay. The Complaint itself claims that "[b]ankruptcy is the vehicle for achieving the intended delay," specifically through the "the automatic stay and a supplementary equitable stay." Compl. ¶¶ 228-36. Plaintiffs do not allege that the supposedly fraudulent transactions caused any delay, nor could they. None of the transactions has been unwound, yet Plaintiffs allege no *ongoing delay*. Nor do they allege any effect on their tort cases when the transactions occurred. Had Old JJCI filed for bankruptcy, without a divisional merger, the automatic stay would have had the same effect on Plaintiffs.

*Second,* delay in reducing a disputed claim to judgment is not a cognizable injury for a claim of fraudulent transfer. The purpose of fraudulent-transfer law is to help a creditor "bring the *property* within the ambit of *collection*," when a debtor has attempted to "remove his property from the 'jaws of execution.'" *Gilchinsky*, 159 N.J. at 475 (citation omitted). For 400-plus years, the purpose has been "to prevent assets from being transferred away from a debtor in exchange for less than fair value, leaving a *lack of funds to compensate the creditors*." *In re Abatement Env't Res., Inc.*, 102 F. App'x 272, 276 (4th Cir. 2004) (emphasis added). Alleged litigation delay is not "harm" protected by the statute.

Here, nothing about the fraudulent-transfer claims implicates this basic,

- 24 -

longstanding purpose; instead, Plaintiffs' complaint is merely with supposed delay in their litigation to prove their claims in the first place. This Court in its *TRO Denial Op.* (at 8 n.10) was right to be "skeptical that the harm Plaintiffs allege, i.e., lengthy litigation, can itself constitute a legally cognizable injury." Indeed, as the Court observed, their theory of injury would allow a fraudulent-transfer claim *whenever* there is protracted litigation. *Id.* Plaintiffs' attempt to use fraudulent-transfer law to attack delay not in collecting on, but merely in litigating, claims would be an unprecedented expansion of the law. This Court should reject it.

## II.    Plaintiffs Lack Any Viable Cause of Action Based on LTL's Bankruptcy Filings.

The Complaint contains numerous allegations to the effect that LTL's prior bankruptcy filings were intended to "hinder, delay, and defraud" Plaintiffs. *See, e.g.*, Compl. ¶ 361 ("LTL's malicious use of the legal process through the filing of LTL 2.0 was done with the actual intent to hinder, delay, and/or defraud Plaintiffs …."); ¶ 40 (alleging "the divisive merger and subsequent bad faith bankruptcy filing were undertaken to hinder, delay, and defraud the Plaintiffs and current and future talc victims"); *see also id.* ¶¶ 38, 41, 66, 206, 227-38, 246, 268.

Plaintiffs' bankruptcy-related allegations are meritless. The proper forum for addressing alleged abuses of the Bankruptcy Code is a bankruptcy court. Plaintiffs' attempt to make an end-run around the Code using state-law claims is preempted, requiring dismissal of Plaintiffs' claims to the extent they are premised on LTL's

- 25 -

bankruptcies. In any event, the Complaint fails to plead any plausible claim based on the bankruptcies.

### A. Plaintiffs May Not Collaterally Attack LTL's Bankruptcy Filings Through State-Law Causes of Action, Which Are Preempted.

Plaintiffs may not use state-law causes of action to collaterally attack LTL's federal bankruptcy filings. Any such cause of action is preempted because it conflicts with the Bankruptcy Code. Aggrieved parties to a bankruptcy case must take up that grievance *in* the bankruptcy case, where Congress through the Code has given the bankruptcy court tools to address it.

The Constitution, in its Supremacy Clause, "invalidates state laws that interfere with, or are contrary to, federal law." *In re Fed.-Mogul Global Inc.*, 684 F.3d 355, 364 (3d Cir. 2012) (citation omitted). The Constitution also empowers Congress to establish "Laws on the subject of Bankruptcies," which must be "uniform … throughout the United States." U.S. Const. art. I, § 8. In bankruptcy, Congress "has generally left the *determination of property rights* … to state law," absent some "controlling federal rule" displacing it. *Butner v. United States*, 440 U.S. 48, 54 (1979) (emphasis added). But the *operation of the bankruptcy case* under the Code is another matter. Congress has determined (11 U.S.C. § 109) who is and is not eligible to be a debtor in bankruptcy, and courts may not "engraft[ ]" additional requirements. *Toibb v. Radloff*, 501 U.S. 157, 160-61 (1991).

Thus, the Bankruptcy Code does not leave space for state-law causes of

actions collaterally attacking a bankruptcy case, and they are preempted as in conflict with the Code. In particular, a party may not bring a state law claim that the "filing of a bankruptcy petition constitutes an abuse of process." *Gonzales v. Parks*, 830 F.2d 1033, 1035 (9th Cir. 1987); *id.* at 1035 (state courts may not "create their own standards" for seeking bankruptcy relief or allow someone "collaterally to attack bankruptcy petitions"). "Even the mere possibility of being sued in tort in state court could in some instances deter persons from exercising their rights in bankruptcy." *Id.* at 1036; *see also, e.g., Raymark Indus., Inc. v. Baron*, 1997 WL 359333, at *10-11 & n.14 (E.D. Pa. June 23, 1997) (applying rule of *Gonzales* in diversity case to find state-law claims challenging bankruptcy petitions impliedly preempted; collecting cases); *Casden v. Burns*, 504 F. Supp. 2d 251, 262-63 (N.D. Ohio 2007) (holding state-law claims challenging filing of bankruptcy petition preempted); *Astor Holdings, Inc. v. Roski*, 325 F. Supp. 2d 251, 262-63 (S.D.N.Y. 2003) (same); *Koffman v. Osteoimplant Tech., Inc.*, 182 B.R. 115, 125 (D. Md. 1995) ("Allowing state tort actions based on allegedly bad faith bankruptcy fillings … to go forward ultimately would have the effect of permitting state law standards to modify the incentive structure of the Bankruptcy Code and its remedial scheme.").[8]

---

[8] The Third Circuit has recognized two exceptions: It has denied field preemption when a state-law claim challenging an involuntary bankruptcy petition was brought by a *non-party* to the bankruptcy. *Rosenberg v. DVI Receivables XVII,*

The preemption includes state-law claims challenging actions taken *in* a bankruptcy case. *E.g., E. Equip. & Servs. Corp. v. Factory Nat. Bank, Bennington*, 236 F.3d 117, 120-21 (2d Cir. 2001) (challenging violation of automatic stay); *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 447-48 (1st Cir. 2000) (challenging violation of automatic stay and discharge injunction); *MSR Expl., Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 912-16 (9th Cir. 1996) (challenging filing of claim in bankruptcy). By placing bankruptcy cases exclusively in the federal courts and regulating them with "'highly complex laws,'" all in the service of promoting national uniformity, Congress impliedly preempted, as conflicting with its scheme, a world in which "'the specter of additional litigation'" would "'haunt virtually ever actor in a bankruptcy proceeding.'" *Raymark*, 1997 WL 359333, at *10 (quoting *MSR*, 74 F.3d at 913-16).

The remedies Congress provided in the Code for the improper filing of or conduct in a bankruptcy case confirm this conclusion. Most obviously, Congress

---

*LLC*, 835 F.3d 414, 418-20 (3d Cir. 2016).  And it has held that the remedy available to an involuntary debtor in 11 U.S.C. § 303(i)(2) was not exclusive of a state-law claim when the debtor faced the "two unattractive alternatives" of pursuing the § 303(i)(2) remedy within a Chapter 7 case while its relations with its creditors collapsed, or converting to a Chapter 11 case and losing that federal remedy. *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 52 (3d Cir. 1988) (so holding "in a situation of this kind"); *see, e.g., Raymark*, 1997 WL 359333, at *11 (recognizing that the Paradise Hotel "opinion [is] explicitly restricted to its facts"); *Glannon v. Garrett & Assocs., Inc.*, 261 B.R. 259, 266 (D. Kan. 2001) (same). Neither is at issue here.

- 28 -

has authorized a creditor to move to dismiss a Chapter 11 case for "cause"—at the outset of a case or later, and for any of sixteen enumerated grounds or even unenumerated "cause"—and required courts to presumptively resolve such motions within 45 days of filing. 11 U.S.C. § 1112(b). The Code also expressly authorizes bankruptcy courts to "sua sponte, tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or *to prevent an abuse of process*." 11 U.S.C. § 105(a) (emphasis added). This includes the power to hold parties in civil contempt and impose sanctions both to compensate and to compel compliance. *E.g., In re Markus*, 78 F.4th 554, 563-66 (2d Cir. 2023). It also includes the authority to bar a debtor from filing a successive bankruptcy case. *E.g., In re Steiner*, 613 B.R. 176, 179 (8th Cir. BAP 2020); *see* 11 U.S.C. § 349(a).

**B.    Plaintiffs Fail to Plead Any Plausible Claims Premised On LTL's Bankruptcies.**

Apart from the categorical bar on any state-law challenges to LTL's bankruptcy filings, the Complaint fails to plead any plausible claim premised on those filings.

*First*, as to the malicious use of process claim (Count IX),[9] Plaintiffs fail to

---

[9] Claims for malicious use of process and malicious abuse of process are widely disfavored by New Jersey courts. *See Turner v. Wong*, 363 N.J. Super. 186, 205 (App. Div. 2003).

allege (1) that any Defendant "instituted a suit *against* plaintiff" or (2) that any Plaintiff suffered a "*special grievance*," both of which are necessary elements to claim. *See Unimaven, Inc. v. Tex. TR, LLC*, 2020 U.S. Dist. LEXIS 42433, at *10 (D.N.J. Mar. 9, 2020) (emphases added). While *a creditor's* filing of an *involuntary* bankruptcy against a debtor might in theory satisfy those elements, Defendants are not aware of any legal authority supporting that a *debtor's* own bankruptcy filing could do so. *See* 52 Am. Jur. 2d *Malicious Prosecution* § 12.

Moreover, Plaintiffs have not adequately pled that *LTL II*—the basis for their malicious use of process claim—was pursued without any reasonable basis or with some unlawful intent. *See Fid. Eatontown, LLC v. Excellency Enter., LLC*, 2017 U.S. Dist. LEXIS 96368, at *22 (D.N.J. June 22, 2017) (dismissing malicious-use claim absent showing that the action was commenced without justification or reasonable cause). Courts assess whether the party had "a reasonable belief that there was a good or sound chance of establishing the claim" in the relevant lawsuit. *LoBiondo v. Schwartz*, 199 N.J. 62, 93 (2009). Plaintiffs cannot plausibly establish any malicious intent because, as detailed above, the Bankruptcy Court found that the "impetus" of *LTL II* was a proposal by 17 plaintiff firms for a "bankruptcy resolution" of LTL's talc liability. *See supra* at 7-9.

**Second,** as to the malicious abuse of process claim (Count X), Plaintiffs have failed to allege any "improper, unwarranted, or perverted use of process" that

- 30 -

would provide the basis for such a claim. *See SBK Catalogue P'ship v. Orion Pictures Corp.*, 723 F. Supp. 1053, 1067 (D.N.J. 1989). Plaintiffs instead offer the single conclusory statement that, "[a]fter commencing the second bankruptcy case, LTL filed hundreds of pleadings in the bankruptcy to advance its improper, illegal, and perverse use of legal process and procedure." Compl. ¶ 370. Tellingly, not a single pleading is identified or described as improper.

**Third**, the Bankruptcy Court has considered and already rejected the Plaintiffs' theory (Compl. ¶¶ 198, 227-38) that use of a divisional merger prior to the filing of LTL's first bankruptcy was designed to "hinder, delay, and defraud" claimants. *See LTL I Bk. Ct. MTD Op.*, 637 B.R. at 422, 426 ("Here, Debtor did not undertake the corporate restructuring and bankruptcy filing as litigation tactics designed solely to gain a litigation advantage or hinder a plaintiff in any of the thousands of pending tort actions."). The Bankruptcy Court instead acknowledged the rational, common-sense reasons why JJCI engaged in a divisional merger prior to LTL's bankruptcy: "Why," the Court marveled, "is it necessary to place at risk the livelihoods of employees, suppliers, distributors, vendors, landlords, retailers— just to name a few innocent third parties—due to the dramatically increased costs and risks associated with all chapter 11 filings, when there is no palpable benefits to those suffering and their families?" *Id.* at 425. The Third Circuit did not disturb these findings.

The Bankruptcy Court also recognized the broader context as reinforcing its reasoning. As the Complaint itself acknowledges, LTL's was not the first bankruptcy to follow a divisional merger. Compl. ¶ 227. And, the Bankruptcy Court explained, "[e]ven apart from the other similarly structured filings currently pending in the Western District of North Carolina," other corporations besieged by asbestos liability had engaged in "similar" prepetition restructuring transactions. *LTL I Bk. Ct. MTD Op.*, 637 B.R. at 424 (discussing restructurings in the *Garlock*, *Mid Valley*, *Babcock & Wilcox*, and *G-I Holdings* bankruptcies). *None* of these bankruptcies was or has been dismissed as a bad faith filing, and the earlier cases all yielded confirmed plans of reorganization.

Plaintiffs fail to explain how employing a similar approach here somehow could plausibly constitute a "fraudulent scheme." Compl. ¶ 7, 198. To be sure, some plaintiff firms for their own reasons dislike the "Texas Two-Step," and commentators in the bankruptcy field and policymakers have debated its merits as a matter of bankruptcy policy.[10] But the disdain of certain plaintiff firms and the dispute over policy provide no plausible grounds for claims that Defendants engaged in some "fraudulent scheme."[11]

---

[10] *See, e.g.*, Anthony J. Casey & Joshua C. Macey, *In Defense of Chapter 11 for Mass Torts*, 90 U. Chi. L. Rev. 973, 974 (2023).

[11] Plaintiffs plead no facts to support their allegation that, due to the divisional merger, Defendants "have no incentive to negotiate in good faith" and therefore advanced only "lowball" settlement offers. Compl. ¶¶ 27. These

- 32 -

*Fourth*, Plaintiffs' suggestion that LTL's bankruptcy served as a "vehicle for achieving the intended delay" (Compl. ¶ 228) is implausible in the context of a chapter 11 case based on § 524(g), as here. The purpose of § 524(g) is to *pay* claimants, through a trust established in bankruptcy, on terms that at least 75% of claimants *accept* and that are otherwise fair and equitable. *See Federal-Mogul*, 684 F.3d at 361-62. Dozens of § 524(g) trusts have been established since Congress created § 524(g) in 1994, and courts, including the Third Circuit, have recognized that they accelerate claimant recoveries compared to the tort system. *See, e.g., id.* at 358, 362. As the Fourth Circuit put it last year: "These bankruptcy procedures promote the equitable, streamlined, and timely resolution of claims in one central place compared to the state tort system, which can and has caused delays in getting payment for legitimate claimants." *In re Bestwall LLC*, 71 F.4th 168, 183 (4th Cir. 2023), *cert. denied sub nom. Off. Comm. of Asbestos Claimants v. Bestwall LLC*, No. 23-675, 2024 U.S. LEXIS 2067 (U.S. May 13, 2024), and *cert. denied sub nom. Esserman v. Bestwall LLC*, No. 23-702, 2024 U.S. LEXIS 2004 (U.S. May 13, 2024).

The Bankruptcy Court agreed with and detailed these general benefits in LTL's own cases. In *LTL I*, the Bankruptcy Court stated its "strong conviction that

---

allegations also directly contradict the Bankruptcy Court's findings.  *See LTL II*, 652 B.R. at 455 (crediting the "dogged efforts of the AHC, Debtor and other parties" for the "remarkable progress … in reaching a viable global settlement").

the bankruptcy court is the *optimal venue for redressing* the harms of both present and future talc claimants … ensuring a meaningful, timely, and equitable recovery." *LTL I Bk. Ct. MTD Op.*, 637 B.R. at 409 (emphases added). And in *LTL II*, while the court considered itself "obliged" by Third Circuit precedent to dismiss for lack of financial distress, it reiterated that "resolution of clams and *payments to victims* can be achieved *at a far more expeditious pace* [through a bankruptcy trust] than through uncertain litigation in the tort system." *LTL II Bk. Ct. MTD Op.*, 652 B.R. at 450 (emphases added). Likewise, in dismissing *LTL I* for lack of financial distress, the Third Circuit nonetheless noted J&J's "[g]ood intentions" to "comprehensively resolve litigation." *3d Cir. Op.*, 64 F.4th at 93.

These findings belie the Plaintiffs' allegations that LTL's bankruptcies were designed to "hinder, delay, and defraud" claimants.

### III. Plaintiffs Fail to State Viable Claims for Aiding and Abetting Actual Fraudulent Transfer.

Plaintiffs fail to assert any viable claims for aiding and abetting actual fraudulent transfers. *First,* Plaintiffs fail to plead viable fraudulent-transfer claims on any of the transactions at issue, so the aiding and abetting counts fail. *See Shaikh v. Germadnig*, 2023 U.S. Dist. LEXIS 120353, at *49 (D.N.J. July 13, 2023) (failure to state a claim for underlying tort defeats claim for aiding that tort).

*Second,* New Jersey's fraudulent-transfer statute, based on the Uniform Voidable Transactions Act ("UVTA") and the earlier Uniform Fraudulent Transfer

Act ("UFTA"), does not provide for claims against non-transferees under any aiding and abetting theory. Consistent with the majority of jurisdictions,[12] New Jersey's Supreme Court has not recognized a separate claim for aiding and abetting a UVTA or UFTA violation. *See Travelers Prop. Cas. Co. of Am. v. Quickstuff, LLC*, 2016 WL 7231605, at *8 (D.N.J. Dec. 14, 2016) (declining to interpret *Banco Popular N. Am. v. Gandi*, 184 N.J. 161 (2005), which permitted a cause of action for *conspiracy* to commit a fraudulent transfer, as "recognizing aiding and abetting liability for UFTA violation"). Nor is aiding and abetting fraudulent transfer a recognized cause of action in Texas or North Carolina. *See In re Silver State Holdings, Assignee-7901 Boulevard 26 LLC*, 2020 WL 7414434, at *31 (Bankr. N.D. Tex. Dec. 17, 2020), *subsequently aff'd sub nom. Matter of Silver State Holdings, Assignee 7901 Boulevard 26, L.L.C.*, 2022 WL 3755778 (5th Cir. Aug. 30, 2022); *Haworth, Inc., v. Janumpally*, 2018 WL 3978173, at *17 (E.D.N.C. Aug. 20, 2018).

---

[12] *See Ron v. Ron*, 836 F. App'x 192, 195 (5th Cir. 2020) ("most other jurisdictions similarly decline to permit claims based on derivative liability for fraudulent transfers"); *Magten Asset Mgmt. Corp. v. Paul Hastings Janofsky & Walker LLP*, 2007 WL 129003, at *3 (D. Del. Jan. 12, 2007) (noting the "majority of courts interpreting state UFTA laws … have concluded that liability cannot be imposed on non-transferees under aiding and abetting or conspiracy theories"); *Crystallex Int'l Corp. v. Petroleos De Venezuela, S.A.*, 879 F.3d 79, 89 (3d Cir. 2018) (holding aiding and abetting fraudulent transfer claims are not cognizable under Delaware law).

**Third,** to the extent Plaintiffs plead a *conspiracy* to commit fraudulent transfer—*see, e.g.*, Compl. ¶ 305 ("Under New Jersey and other applicable state laws, these parties are liable for conspiring to commit and/or aiding and abetting the fraudulent transfer")—such a claim would be precluded by the intra-corporate immunity doctrine. *E.g.*, *United States v. Medco Health Sys., Inc.*, 2014 WL 4798637, at *11-12 (D.N.J. Sept. 26, 2014) ("The [intra-corporate conspiracy doctrine] provides that a wholly owned subsidiary is deemed incapable of conspiring with its parent company, and it has long been applied to conspiracy claims generally.").[13] The Defendants named in the aiding and abetting counts were, at the time of the alleged transfers, either wholly owned subsidiaries of J&J or employees or agents of J&J or its wholly owned subsidiaries. Compl. ¶¶ 80-94. In addition, such a claim fails for failing to adequately plead or establish injury based on the alleged fraudulent transfers. *See*, *e.g.*, *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 533 (D.N.J. 2011); *supra* Arg. I.

---

[13] *See also Atl. Richfield Co. v. Misty Prod., Inc.*, 820 S.W.2d 414, 421 (Tex. App. 1991); *Cent. Nat'l Gottesman Inc. v. Nakos Paper Prod. Inc.*, 2019 WL 7670103, at *8 (W.D.N.C. Aug. 28, 2019) (dismissing claim of conspiracy to commit fraudulent transfer, noting "the doctrine of intracorporate immunity, which is well established in North Carolina, generally prohibits bringing a conspiracy claim against a corporation and its agents"); *WBDH-BC Holdings Ltd. v. Varsatel Corp.*, 2022 WL 3701452, at *7 (S.D. Fla. June 16, 2022) (dismissing claim of conspiracy to commit fraudulent transfer under intra-corporate immunity doctrine).

*Fourth,* even if aiding and abetting claims were permitted, Plaintiffs have failed to state a claim. The heightened standard of Rule 9(b) that applies to UVTA claims would apply. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 293 (2d Cir. 2006) (applying Rule 9(b) to aiding and abetting fraud) (citation omitted); *Coelho v. All. Mortg. Banking Corp.*, 2007 U.S. Dist. LEXIS 39633, at *9 (D.N.J. May 10, 2007) (dismissing aiding and abetting claim under Rule 9(b)). The Complaint pleads no particularized facts that any of the Aiding and Abetting Defendants were aware that the challenged transactions were illegal or fraudulent. *See August Uribe Fine ART, LLC v. SRL*, 2023 U.S. Dist. LEXIS 51422, at *21 (D.N.J. Mar. 27, 2023) (dismissing aiding and abetting fraud claim where complaint failed to allege that defendant knew he was participating in a fraud). Nor have Plaintiffs sufficiently alleged that the Aider and Abettor Defendants provided "substantial assistance." *Laven v. Flanagan*, 695 F. Supp. 800, 810 (D.N.J. 1988) (holding the "lone act of signing the registration statement and prospectus" was "too slender a reed" and that "[f]indings of substantial assistance"). *See* Compl. ¶¶ 87-94 (alleging certain defendants "signed documents" or "authorized" the bankruptcies).

## IV.   Plaintiffs Are Not Entitled to Declaratory Relief.

Plaintiffs seek a declaratory judgment that the challenged transfers underlying their fraudulent-transfer claims (in Counts I, IV and VI) were intended to hinder, delay, and defraud talc claimants and were actual frauds (Compl. ¶ 355,

- 37 -

Count VIII). Plaintiffs also seek a declaratory judgment that the 2021 Funding Agreement was not rendered void or voidable by the Third Circuit's Opinion in *LTL I* (Compl. ¶ 318, Count III). A district court has "discretion in determining whether and when to entertain an action under the Declaratory Judgment Act," *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995), and declaratory relief is not warranted in either case.

**First,** Plaintiffs' requests for declaratory relief are duplicative of their other (defective) claims. *Gov't Emps. Ins. Co. v. Elkholy*, 2022 U.S. Dist. LEXIS 116240, at *36 (D.N.J. June 30, 2022) ("the Court declines any invitation to make a duplicative finding on the same issue under the guise of a declaratory judgment action"). Because Plaintiffs' actual-fraudulent-transfer claims are baseless (*supra*, Arg. I), their request for a related declaratory judgment is likewise baseless and redundant.

Similarly, as Plaintiffs acknowledge, they seek declaratory judgment that the 2021 Funding Agreement was not void or voidable to bolster their claim that termination of the 2021 Funding Agreement and the divisive merger were fraudulent (Compl. ¶ 315), which is the subject of Plaintiffs' separate fraudulent transfer claims. Because the void or voidability issue is subsumed in these separate claims, no declaratory relief is warranted. *Maniscalco v. Brother Int'l Corp. (USA)*,

- 38 -

627 F. Supp. 2d 494, 504 (D.N.J. 2009) (dismissing declaratory judgment claim where the declaration plaintiffs sought would be duplicative of fraud claims).

**Second,** Plaintiffs do not have standing to seek a declaratory judgment regarding the enforceability of the 2021 Funding Agreement, a contract to which they are not a party. *See Am. Home Assurance Co. v. Liberty Mut. Ins. Co.*, 475 F. Supp. 1169, 1172-73 (E.D. Pa. 1979) (dismissing an action for declaratory relief because the movants were not parties to the contract); *Residences at Bay Point Condo. Ass'n v. Chernoff Diamond & Co., LLC*, 2017 U.S. Dist. LEXIS 56451, at *16 (D.N.J. Apr. 13, 2017) (declaratory judgment of contractual interpretation brought by non-party to the contract is impermissible).

## CONCLUSION

For the foregoing reasons, Defendants respectfully ask the Court to dismiss the Complaint in its entirety.

Dated: July 11, 2024

Respectfully submitted,
/s/ *Susan M. Sharko*
Susan M. Sharko
**FAEGRE DRINKER BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
(973) 549-7350
susan.sharko@faegredrinker.com

Kristen Renee Fournier (*pro hac forthcoming*)
**King & Spalding LLP**
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 556-2100
kfournier@kslaw.com

*Attorneys for Defendants LLT Management LLC (f/k/a LTL Management LLC), Johnson & Johnson, Johnson & Johnson HoldCo (NA) Inc., Janssen Pharmaceuticals, Inc., Kenvue, Inc., and J&J Services, Inc.*

Glenn M. Kurtz (*pro hac vice*)
Jessica C. Lauria (*pro hac vice*)
Gregory M. Starner (*pro hac vice*)
Matthew E. Linder (*pro hac vice*)
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
gkurtz@whitecase.com
gstarner@whitecase.com
mlinder@whitecase.com
jessica.lauria@whitecase.com

*Attorneys for Defendants Johnson & Johnson, Johnson & Johnson HoldCo*

- 40 -

*(NA) Inc., Janssen Pharmaceuticals, Inc., Kenvue Inc., and J&J Services, Inc.*

Gregory M. Gordon (*pro hac vice*)
David S. Torborg (*pro hac vice*)
C. Kevin Marshall (*pro hac forthcoming*)
Dan Prieto (*pro hac forthcoming*)
**JONES DAY**
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
gmgordon@jonesday.com
dstorborg@jonesday.com
ckmarshall@jonesday.com
dbprieto@jonesday.com

*Attorneys for Defendant LLT Management LLC (f/k/a as LTL Management LLC)*

- 41 -