## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| REBECCA LOVE, D.D.S., SHARON MURPHY, WILLIAM A. HENRY, ALISHIA GAYLE DAVIS, AND BRANDI CARL, INDIVIDUALLY AND ON BEHALF OF A PROPOSED CLASS, <br><br> Plaintiffs, <br><br> v. <br><br> RED RIVER TALC, LLC; JOHNSON & JOHNSON; JOHNSON & JOHNSON HOLDCO (NA), LLC; JANSSEN PHARMACEUTICALS, INC.; and KENVUE, INC., <br><br> Defendants. | Hon. Michael A. Shipp <br><br> Case No. 3:24-cv-06320 <br><br> **Motion Date: July 21, 2025** |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
## AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................3

I.    Plaintiffs Do Not Allege Any Cognizable Injury and, Therefore, Lack
      Standing and Fail to State a Claim .............................................................3

      A.    Plaintiffs Lack Standing Because They Fail to Allege Any Injury
            from the Alleged  Fraudulent Transfers ...........................................3

      B.    Plaintiffs Are Estopped from Alleging Injury ..................................6

      C.    Plaintiffs' Alleged "Hindrance and Delay" Is Unrelated to the
            Alleged Fraudulent Transfers and Not Actionable ..........................6

II.   Plaintiffs Fail to State a Claim for Malicious Abuse of Process ..............11

CONCLUSION ...................................................................................................15

AMERICAS 130460081

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re Abramson*,
 313 B.R. 195 (Bankr. W.D. Pa. 2004) ...............................................................7

*Adelphia Recovery Tr. v. Bank of Am., N.A.*,
 390 B.R. 80 (S.D.N.Y. 2008)..............................................................................4

*Baglini v. Lauletta*,
 768 A.2d 825 (N.J. Super. Ct. App. Div. 2001)...............................................13

*Bednar v. Pierce & Assocs., P.C.*,
 220 F. Supp. 3d 860 (N.D. Ill. 2016) ................................................................7

*In re Central Illinois Energy LLC*,
 482 B.R. 772 (Bankr. C.D. Ill. 2012) ................................................................7

*Chemtex, LLC v. St. Anthony Enters., Inc.*,
 490 F. Supp. 2d 536 (S.D.N.Y. 2007)................................................................4

*Cox v. Zale Delaware*,
 1998 WL 397841 (N.D. Ill. July 9, 1998).........................................................7

*Crow v. Beardsley*,
 68 Mo. 435 (1878).............................................................................................5

*Emolo v. McDaniel*,
 2009 WL 2243792 (N.J. Super. Ct. App. Div. July 29, 2009)........................14

*Firmani v. Firmani*,
 752 A.2d 854 (N.J. Super. Ct. App. Div. 2000)................................................5

*Glannon v. Garrett & Assocs., Inc.*,
 261 B.R. 259 (D. Kan. 2001) ............................................................................8

iii

*Habitat Educ. Ctr. v. U.S. Forest Serv.*,
607 F.3d 453 (7th Cir. 2010)...............................................................................5

*Hawkins v. Harris*,
661 A.2d 284 (N.J. 1995)...................................................................................13

*Kent v. PoolTogether, Inc.*,
676 F. Supp. 3d 144 (E.D.N.Y. 2023) ................................................................5

*King v. Ethicon, Inc.*,
2022 WL 2341633 (D.N.J. June 29, 2022) ........................................................11

*Leisure Pass N. Am., LLC v. Leisure Pass Grp., Ltd.*,
2013 WL 4517841 (D.N.J. Aug. 26, 2013)........................................................11

*Meng v. Du*,
2020 WL 4593273 (D.N.J. Aug. 11, 2020)........................................................12

*MSPA Claims 1, LLC v. Tenet Florida, Inc.*,
918 F.3d 1312 (11th Cir. 2019)...........................................................................5

*In re Northwest Co.*,
2020 WL 2121269 (Bankr. S.D.N.Y. May 1, 2020).............................................7

*Shapiro v. Wilgus*,
287 U.S. 348 (1932) ............................................................................................5

*Soos v. Soos*,
185 A. 386 (N.J. Ch. 1936) ...............................................................................11

*Swarovski Optik N. Am. Ltd. v. iBuy Grp.*,
2024 WL 4696614 (D.N.J. Nov. 6, 2024)..........................................................14

*Tedards v. Auty*,
557 A.2d 1030 (N.J. Super. Ct. App. Div. 1989)....................................... 11, 12

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ............................................................................................4

iv

*United Ass'n v. Schmidt,*
    2011 WL 766057 (D.N.J. Feb. 24, 2011) ........................................................3

*United States ex rel. Bibby v. Mortg. Invs. Corp.,*
    2016 WL 11268258 (N.D. Ga. Aug. 12, 2016) ...............................................4

*Van v. LRR, Inc.,*
    962 F.3d 1160 (9th Cir. 2020)..........................................................................5

*Williams v. BASF Catalysts LLC,*
    765 F.3d 306 (3d Cir. 2014).............................................................................14

*Zebrowski v. Wells Fargo Bank, N.A.,*
    657 F. Supp. 2d 511 (D.N.J. 2009) ................................................................12

## COURT RULES

N.J. L.Civ.R. 7.2(d)..............................................................................................15

AMERICAS 130460081

## <u>INTRODUCTION</u>

Plaintiffs' Opposition ("<u>Opp.</u>" or "<u>Opposition</u>") is long on inflammatory rhetoric and short on substance and legal authorities. Plaintiffs are contingent creditors who assert fraudulent transfer claims challenging transactions that, by their own admission, did not leave them unable to recover on their claims.[1] Because Plaintiffs concede that none of the challenged transactions caused any cognizable harm to them, they lack standing to assert these claims.

Plaintiffs respond with misdirection and misrepresentations. For instance, Plaintiffs repeatedly assert that Defendants made false statements to this Court when they said Red River may file for bankruptcy if 75% of claimants voted to accept the prepackaged plan, but then allegedly filed after achieving only 70%. To the contrary, Red River filed for bankruptcy after 83% of claimants voted in support. It was only after litigation largely driven by Plaintiffs' counsel here that the bankruptcy court ultimately determined that certain votes were not properly submitted based on voting irregularities by claimants' counsel, including Plaintiffs' counsel here. The bankruptcy court's determination (more than six months after the bankruptcy filing) was based on grounds—including how Plaintiffs' counsel here and other claimants' counsel communicated with their clients for purposes of voting—that Defendants did not and could not have known when Red River filed.

---

[1] This Reply adopts the applicable defined terms used in the Motion.

1

Incorrect allegations aside, Plaintiffs do not state a claim for any legally cognizable cause of action. Plaintiffs challenge the transactions transferring assets, but admit—and indeed have advocated—that the relevant entities had or have sufficient assets to pay any judgments Plaintiffs may or may not obtain. Having admitted to lacking required harm concerning collection, Plaintiffs now argue that they were harmed by delay. But the alleged delay is not alleged to have been caused by the transfers. Instead, Plaintiffs argue that they were delayed by the bankruptcy filings. That argument is faulty because the bankruptcy filings were not transfers of assets, so they cannot form the basis for a fraudulent transfer claim. Additionally, any delay caused by the statutory automatic stay in bankruptcy cannot support a fraudulent transfer claim. Parties have a right to file for bankruptcy protection, and federal law preempts any state law claim based on the bankruptcy filing. Thus, despite scouring the legal and literary record, and citing everything from 16th century statutes to Charles Dickens, Plaintiffs have not, and cannot, cite a single authority allowing a bankruptcy filing, or any litigation delay for that matter, to serve as harm for the purposes of stating a fraudulent transfer claim. The proper forum to challenge the effect of the automatic stay was in the bankruptcy court, and Plaintiffs did exactly that. Plaintiffs and their counsel objected to the application of the automatic stay to their cases, and the bankruptcy courts largely overruled them. Plaintiffs cannot convert their loss on this issue in federal court into a state law claim.

AMERICAS 130460081

The Court should dismiss the Amended Complaint with prejudice.

## **ARGUMENT**

**I.    Plaintiffs Do Not Allege Any Cognizable Injury and, Therefore, Lack Standing and Fail to State a Claim**

**A.    Plaintiffs Lack Standing Because They Fail to Allege Any Injury from the Alleged Fraudulent Transfers**

To establish standing and state a fraudulent transfer claim, Plaintiffs must allege a material risk of non-payment of their underlying claims.  Mot. 19-23.  Plaintiffs do not dispute that the purpose of the UVTA is to prevent a debtor from placing his or her property beyond the creditor's reach.  Mot. 19-21; *United Ass'n v. Schmidt*, 2011 WL 766057, at *7 (D.N.J. Feb. 24, 2011).  Thus, the remedy for a voidable transfer allows the creditor to recover only the lesser of "the value of the asset transferred . . . *or the amount necessary to satisfy the creditor's claim*[.]"  Mot. 20 (emphasis added).

Plaintiffs assert the various transactions were "corporate shell games" that moved assets around, but they do not allege any of the transactions left them without the ability to recover on their contingent claims.  Opp. 1.  To the contrary, Plaintiffs admit, indeed have advocated, that the respective debtors had and still have sufficient assets to satisfy any potential judgments.  Mot. 23-25.  And in their Opposition, Plaintiffs again concede that they "do not argue here that $61.5 billion (plus prejudgment interest) [the amount available after the "Divisive Merger Fraud"]

3

would be insufficient to pay all class claims" or "that $29.9 billion (plus prejudgment interest) [the amount available after the "Asset Stripping Fraud" and "Bait-and-Switch Fraud"] would not suffice to pay all class claims." Opp. 24-25. Nor do Plaintiffs contend the amounts available after the "Potemkin Democracy Fraud" or the "Integrated Fraud" are insufficient to pay their contingent claims. That ends the standing inquiry—without a risk of non-payment, there is no injury to support any fraudulent transfer claim.[2] Mot. 20-22; *see also Chemtex, LLC v. St. Anthony Enters., Inc.*, 490 F. Supp. 2d 536, 542 (S.D.N.Y. 2007) (holding that plaintiffs lacked standing where they did not allege that the transfer affected their ability to recover); *Adelphia Recovery Tr. v. Bank of Am., N.A.*, 390 B.R. 80, 95 (S.D.N.Y. 2008), *aff'd*, 379 F. App'x 10 (2d Cir. 2010) ("A party does not have standing to sue [for fraudulent transfer] where the party is not able to allege an injury that is likely to be redressed by the relief sought."); *United States ex rel. Bibby v. Mortg. Invs. Corp.*, 2016 WL 11268258, at *13 (N.D. Ga. Aug. 12, 2016) (finding no standing because the "fraudulent transfer claim still ha[d] no direct tie to the original harm").

---

[2] Plaintiffs attempt to distinguish *TransUnion* by asserting that "this case is about monetary harms," which confers standing. Opp. 17. But Plaintiffs have never ascribed a value to their contingent talc claims, much less alleged they could not recover on such claims. Thus, Plaintiffs are similar to the would-be plaintiffs in *TransUnion*, who could not identify any concrete injury to confer standing because they had not alleged any actual harm in the form of a material risk they would not recover on their claims. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 437 (2021) (dismissing claim for lack of standing where plaintiffs "did not demonstrate that the risk of future harm [had] materialized").

4

Plaintiffs' cited cases stand for the unremarkable proposition that fraudulent conveyances may arise where plaintiffs are unable to recover the value of their claims, which Plaintiffs concede is not an issue here.[3]  For example, in *Firmani v. Firmani*, the only case cited by Plaintiffs applying modern UFTA law, a plaintiff sought to avoid a transfer that had prevented recovery on a claim.  *Firmani v. Firmani*, 752 A.2d 854, 855-56 (N.J. Super. Ct. App. Div. 2000).  The case turned on the plaintiff's inability to recover as a result of the transfer, which Plaintiffs do not allege here. [4]  Plaintiffs have not cited a single case finding standing or supporting a claim under the UVTA or UFTA where plaintiffs do not allege a material risk they will not be able to recover on their contingent claims.

---

[3] *See Crow v. Beardsley*, 68 Mo. 435, 439 (1878) (transfer of a deed for the purpose of preventing execution on a debt); *Shapiro v. Wilgus*, 287 U.S. 348, 354 (1932) (transferring assets to a receivership to block plaintiff from recovering a debt).

[4] Plaintiffs also cite cases that recognize injury where a party is denied the ability to "have and use money," but none of them are fraudulent transfer cases and they all required an entitlement to the money at issue.  *See, e.g.*, *Van v. LRR, Inc.*, 962 F.3d 1160, 1162 (9th Cir. 2020) (conversion claim); *MSPA Claims 1, LLC v. Tenet Florida, Inc.*, 918 F.3d 1312, 1317 (11th Cir. 2019) (harm resulting from failure to repay money owed); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010) (finding standing to challenge a bond order after having already paid the bond).  Here, Plaintiffs are contingent tort claimants that are not entitled to anything at this point (and likely will never be entitled to recover anything).  *See, e.g.*, *Kent v. PoolTogether, Inc.*, 676 F.Supp.3d 144, 150 (E.D.N.Y. 2023) (dismissing claim and holding "whether the defendants *wrongfully withheld* [money] from [plaintiff] . . . depends on whether he was entitled to it in the first place.") (emphasis added).

5

**B.      Plaintiffs Are Estopped from Alleging Injury**

Defendants demonstrated in the Motion that Plaintiffs are estopped from alleging that they will not be able to collect on any judgment they obtain, the injury necessary for a fraudulent transfer claim.  Mot. 23-29.  As addressed above, Plaintiffs do not dispute that they are unable to allege any injury based on the alleged fraudulent transfers.  In fact, they argue collateral estoppel and judicial estoppel do not apply because they are not arguing a collection risk on their contingent claims. Opp. 24-27.  Thus, as addressed in the prior section, this claim is deficient.[5]

**C.      Plaintiffs' Alleged "Hindrance and Delay" Is Unrelated to the Alleged Fraudulent Transfers and Not Actionable**

Plaintiffs argue that, notwithstanding that the relevant entities following each alleged fraudulent transfer had sufficient assets to pay any potential judgments, Plaintiffs were nonetheless harmed because the statutory stay in the bankruptcies allegedly served to "hinder and delay" their tort cases.  That alleged delay does not confer standing or state a claim.

---

[5] Despite conceding that they cannot argue a collection risk, Plaintiffs argue estoppel does not apply because the ability to pay the talc liabilities litigated in the bankruptcy cases was "not really the same issue as here."  Opp. 22.  The relevant issue here— that there are sufficient funds to cover Plaintiffs' contingent talc liabilities after each of the alleged fraudulent transfers—is exactly the same.  Mot. 24-25.

*First*, Plaintiffs allege delay based on the bankruptcy filings, not the alleged fraudulent transfers. *See* Mot. 21-22. Thus, any alleged delay is irrelevant to the fraudulent transfer claims.

*Second*, the alleged delay resulting from the bankruptcy filings is irrelevant because the bankruptcy filings were not a transfer of assets, fraudulent or otherwise. *See, e.g.*, *In re Northwest Co.*, 2020 WL 2121269, at *3 (Bankr. S.D.N.Y. May 1, 2020) (rejecting argument that bankruptcy filing constituted a "transfer of assets"); *In re Cent. Illinois Energy LLC*, 482 B.R. 772, 790 n.18 (Bankr. C.D. Ill. 2012) ("There is no reasoned basis . . . to consider a [bankruptcy] filing to have effected a transfer"). Plaintiffs in fact concede that the alleged fraudulent transfers effectuated through the corporate restructurings took place *before* the bankruptcy filings. Opp. 30.

*Third*, invoking federal law to file a bankruptcy petition is not actionable. Any "litigation delay" attendant to the application of a federal statute is preempted and not actionable. Mot. 31-33; *Bednar v. Pierce & Assocs., P.C.*, 220 F. Supp. 3d 860, 863-64 (N.D. Ill. 2016) (recognizing state law claim preempted by the Bankruptcy Code); *Cox v. Zale Delaware*, 1998 WL 397841, at *5 (N.D. Ill. July 13, 1998) (finding the state law claims preempted when they "depend solely upon and thus are intricately related to alleged violations of the Code"); *In re Abramson*, 313 B.R. 195, 197 (Bankr. W.D. Pa. 2004) (recognizing that the vast majority of courts have held

AMERICAS 130460081

that the Bankruptcy Code preempts state law claims); *Glannon v. Garrett & Assocs., Inc.*, 261 B.R. 259, 264 (D. Kan. 2001) (holding that the state law claims were preempted by the Bankruptcy Code).[6]  The proper forum to challenge a bankruptcy filing is the bankruptcy court.  Indeed, Plaintiffs and their counsel or proxies objected to the scope and application of the automatic stay to their talc claims in the bankruptcies.  *See, e.g.*, Obj. of Coal. to Debtor's Emergency Mot. for an Order Declaring Automatic Stay Applies to Certain Actions Against Non-Debtors, *Red River Talc LLC v. Those Parties Listed on Appendix A to Complaint*, No. 24-03194, (Bankr. S.D. Tex. Sept. 23, 2024), Dkt. 10 (Ex. A).  The bankruptcy courts largely overruled their objections,[7] and Plaintiffs cannot use the statutorily provided and court determined stay to state a state law claim.

---

[6] Plaintiffs' contention that their alleged loss of the time value of money is sufficient to confer standing does not remedy the deficiency.  Opp. 21.  In addition to being totally speculative, any delay was caused by the bankruptcies and, therefore, is preempted and not actionable.  Moreover, Plaintiffs do not allege that they would be unable to recover for the time value of money in connection with any potential judgment that they may obtain on their tort claims.

[7] *See, e.g.*, Order, *LTL Mgmt. LLC v. Those Parties Listed on Appendix A to Complaint*, No. 21-03032 (Bankr. D.N.J. Mar. 4, 2022), Dkt. 187 (Ex. B); Order, *LTL Mgmt. LLC v. Those Parties Listed on Appendix A to Complaint*, No. 23-01092 (Bankr. D.N.J. Apr 25, 2023), Dkt. 91 (Ex. C); Order, *Red River Talc LLC v. Those Parties Listed on Appendix A to Complaint*, No. 24-03194 (CML) (Bankr. S.D. Tex. Oct. 24, 2024), Dkt. 57 (Ex. D).  Notably, certain objecting parties including Plaintiffs' counsel here appealed the Order granting the automatic stay to non-debtors, and that appeal remains pending to this day.  *See generally Coal. of Couns. for Just. for Talc Claimants v. Red River Talc LLC*, No. 24-04450 (S.D. Tex. Nov. 13, 2024).

AMERICAS 130460081

Recognizing the fact that they cannot support a claim based on a bankruptcy filing, Plaintiffs argue that they are not challenging the bankruptcies (Opp. 3, 6-7), but the Amended Complaint plainly alleges that the alleged delay was caused by "the automatic stay provisions of the Bankruptcy Code along with equitable stays to freeze all talc litigation." Mot. 31-32 (citing Am. Compl. ¶¶ 16, 69). The Opposition likewise relies on only the bankruptcies. *See, e.g.*, Opp. 7 (alleging the bankruptcies caused the litigation delays); *id.* at 8 (asserting that the Red River bankruptcy allowed Defendants to "gain[]" hindrance and delay); *id.* at 13 (asserting that Plaintiffs' cases were "repeatedly interrupted by automatic stays" from the bankruptcies); *id.* at 24-25 (asserting the "bankruptcy system was never properly available" to Defendants); *id.* at 25 ("Defendants, via the fraudulent transfers, limited and restricted what would have been a panoply of restructuring options *in the bankruptcy cases*.") (emphasis added); *id*. at 4 (alleging a defective vote solicitation process under the Bankruptcy Code).[8] These conflicting arguments cannot be reconciled with one another.

*Fourth*, delay in litigating a contingent tort claim is not a cognizable injury sufficient to support a claim of fraudulent transfer in any case. Mot. 30-31. This

---

[8] Plaintiffs' attempt to equate the filing of the prior bankruptcy petitions under federal law—which the bankruptcy courts have recognized as an appropriate means to resolve the talc claims designed to achieve "a fair, efficient, and expeditious settlement" and to "pay claimants soon" (Mot. 34)—with pulling a fire alarm in a courthouse just demonstrates the weakness of the claim. Opp. 28.

AMERICAS 130460081

Court has already expressed skepticism "that the harm Plaintiffs allege, *i.e.* lengthy litigation, can itself constitute a legally cognizable injury." Dkt. 31 at 8 n.10. The Court further noted "critically" that Plaintiffs have been unable to identify any case law to support such a theory. *Id.* More than a year later, after scouring the legal record of the past few centuries, Plaintiffs are still unable to cite a single case where alleged litigation delay itself was recognized as a legally cognizable harm for purposes of a fraudulent transfer claim, much less where such delay was a product of a bankruptcy filing. This is not surprising, as the purpose of fraudulent transfer law is only to intervene where a transfer leaves a creditor without the ability to recover, which Plaintiffs concede they are not alleging here. Mot. 19-22. Allowing Plaintiffs to expand the use of fraudulent-transfer law to challenge any litigation delay, where Plaintiffs admit they will be paid if they prevail on their contingent talc claims, would be unprecedented and unfounded, even if it were not otherwise preempted (which it is).[9]

---

[9] Nor are Plaintiffs' allegations plausible given the repeated findings by the bankruptcy courts that the bankruptcies were designed to pay claimants more expeditiously than in the tort system. *See, e.g.*, *LTL II MTD Op.*, at 442-43, 455 (reiterating that bankruptcy is an appropriate means to resolve mass tort liability and praising the parties for paving the "foundation for a fair, efficient, and *expeditious* settlement") (emphasis added); *RRT Bk. Ct. Op.*, at *3, *57 (recognizing the RRT Plan "would pay claimants soon, when there is no certainty of payment in the tort system" and no guarantee of a trial date in the foreseeable future). Plaintiffs try to dismiss the findings in *RRT* as "aspirational dicta" (Opp. 29), but the bankruptcy's goal to give effect to the wishes of the overwhelming majority of claimants that

AMERICAS 130460081

## II.    Plaintiffs Fail to State a Claim for Malicious Abuse of Process

Plaintiffs fail to state a claim for malicious abuse of process for a number of independent reasons.  Mot. 36-40.  Plaintiffs largely ignore the pleading deficiencies identified in the Motion and otherwise mischaracterize the record.

*First*, Defendants neither sought nor obtained any process from this Court in this action that was initiated by Plaintiffs.  Defendants have never requested or received any process—such as a writ, attachment, or subpoena—which is required for any abuse of process claim.  Mot. 37-38.  Plaintiffs did not address this argument in their Opposition, therefore conceding the point.[10]  *See, e.g.*, *Leisure Pass N. Am., LLC v. Leisure Pass Grp., Ltd.*, 2013 WL 4517841, at *4 (D.N.J. Aug. 26, 2013) ("Plaintiff has waived its opposition to this argument by failing to respond to it."); *King v. Ethicon, Inc.*, 2022 WL 2341633, at *5 (D.N.J. June 29, 2022) (dismissing claim because plaintiff failed to address defendant's arguments).

---

supported the proposed global settlement that would have paid claimants sooner than in the tort system was central to the court's ruling.  *RRT Bk. Ct. Op.*, at *3, *43.

[10] Indeed, Plaintiffs' own authorities confirm that malicious abuse of process claims require some abuse of court-issued process, which Plaintiffs have not alleged.  Opp. 37 (citing *Tedards v. Auty*, 557 A.2d 1030, 1035 (N.J. Super. Ct. App. Div. 1989) (threat of reincarceration using a court-issued writ to extort a settlement); F. Harper et al., HARPER, JAMES AND GRAY ON TORTS § 4.9 (3d ed. 2024) (recognizing that malicious abuse of process claims require a party obtaining a subpoena, attachment, criminal prosecution or other court-issued process to coerce another party)).  Plaintiffs also cite to *Soos v. Soos*, which concerned physical abuse in a divorce proceeding, not malicious abuse of process.  185 A. 386, 387-88 (N.J. Ch. 1936).

11

*Second*, without any allegation of the requisite process to support a claim, Plaintiffs cannot state a claim based on any alleged "further acts."[11]   Nor can Plaintiffs argue that Defendants engaged in "further acts" by stating that Red River would potentially file a bankruptcy petition only if at least 75% of claimants voted to accept the plan, but then allegedly filing with only 70% support.  Opp. 36-38; Am. Compl. ¶¶ 170-180.  Plaintiffs blatantly misrepresent the facts to the Court.  Red River filed the bankruptcy case only after receiving approving votes from 83% of claimants. *RRT Bk. Ct. Op.*, at *13 (recognizing that the voting agent "certified that about 83% of voting claimants voted to accept the Initial Plan" at the time the bankruptcy was filed); First Day Decl. of John Kim (Mot. Ex. A) ¶ 8, (explaining that after the agreement with Allen Smith, Red River had over 83% claimant support for the RRT Plan when it filed).  Subsequently, Plaintiffs and their counsel contested the votes, and the bankruptcy court ultimately determined that certain votes were not properly submitted, largely as a result of voting irregularities by claimants' counsel. *RRT Bk. Ct. Op.*, at *25-27 (discussing "serious problems" and "controversy" with

---

[11] Plaintiffs cite *Tedards*, but that case involved the improper issuance of a writ. *Tedards*, 557 A.2d at 1035-36.  Plaintiffs' other cases are likewise inapposite and only further support dismissal here. *Meng v. Du*, 2020 WL 4593273, at *6 (D.N.J. Aug. 11, 2020) (dismissing abuse of process claim based on alleged ulterior motive for service of process where there were no further acts alleged); *Zebrowski v. Wells Fargo Bank, N.A.*, 657 F. Supp. 2d 511, 518 (D.N.J. 2009) (dismissing abuse of process claim where plaintiff failed to allege any "further act, which includes 'attachment, execution, garnishment, sequestration proceedings, arrest, and criminal prosecution'") (citation omitted).

the Beasley Allen votes). The bankruptcy court's determination six months after the bankruptcy filing was based on grounds—including how Plaintiffs' counsel here and other claimants' counsel communicated with their clients for purposes of voting—that Defendants did not and could not have known when Red River filed.[12] Indeed, the bankruptcy court determined that Red River acted in good faith in pursuing a Chapter 11 plan to settle the talc claims in bankruptcy, which was a valid bankruptcy purpose. *RRT Bk. Ct. Op.*, at *42 (concluding that many of the voting issues were inadvertent mistakes and finding "no evidence of collusion or other improper behavior.").

*Third*, the statements at issue are protected by the litigation privilege. Mot. 39-40. Plaintiffs do not dispute the litigation privilege, but contend it is limited only to attorneys and claims of defamation. Opp. 38-39. That is wrong, as even the cases cited by Plaintiffs acknowledge. *Hawkins v. Harris*, 661 A.2d 284, 292 (N.J. 1995) ("[L]itigation immunity . . . protects lawyers, judges, witnesses, *parties*, and jurors.") (emphasis added). And courts have specifically applied the privilege to malicious abuse of process claims. Mot. 39-40; *Baglini v. Lauletta,* 768 A.2d 825, 833 (N.J. Super. Ct. App. Div. 2001) ("[w]e reject plaintiffs' argument that the litigation

---

[12] For example, the RRT Court concluded that certain votes, including votes by Plaintiffs' counsel here, were invalid and could not be counted because claimants' counsel did not obtain proper authorization or consent from their clients. *RRT Bk. Ct. Op*., at *25, *33-35, *41-43. The court's determination was based on discovery (including deposition testimony) taken during the bankruptcy proceedings. *Id.*

13

privilege is not applicable to malicious abuse of process causes of action"); *see also Swarovski Optik N. Am. Ltd. v. iBuy Grp. LLC.*, 2024 WL 4696614, at *2-4 (D.N.J. Nov. 6, 2024) (statements made in pleadings are protected by litigation privilege and dismissing malicious abuse of process claim); *Emolo v. McDaniel*, 2009 WL 2243792, at *7 (N.J. Super. Ct. App. Div. July 29, 2009) (upholding dismissal of malicious abuse of process claim in part due to litigation privilege protecting the disputed communications).[13]  Here, Plaintiffs' malicious abuse claim is premised on Defendants' (entirely accurate) statements made in responsive pleadings filed in this action.  Am. Compl. ¶ 179.  This is exactly the type of judicial submission protected by the litigation privilege.  Mot. 39-40.[14]

---

[13] Plaintiffs try to dismiss *Component Hardware Grp., Inc. v. Trine Rolled Moulding Corp.* (Mot. 39-40) as merely dicta (Opp. 39 n.14), but the court unequivocally held that "the statements that [plaintiff] made to the court after filing the [c]omplaint and injunction application, even if they were material misrepresentations, were protected by litigation privilege."  2007 WL 2177667, at *5 (D.N.J. July 27, 2007) (citing *Baglini*, A.2d at 833).

[14] Plaintiffs' reliance on *Williams v. BASF Catalyst LLC* is misplaced.  In *Williams*, the Third Circuit found that litigation privilege did not apply to a claim of *fraud*, which has not and cannot be alleged here.  765 F.3d 306, 318-20 (3d Cir. 2014).  And the *Williams* court also acknowledged that the New Jersey Supreme Court had applied the litigation privilege to dismiss a claim for malicious abuse of process.  *Id.* (citing *Ruberton v. Gabage*, 654 A.2d 1002, 1004-05 (N.J. Super. Ct. App. Div. 1995)).

AMERICAS 130460081

## <u>CONCLUSION</u>

For the foregoing reasons, and for those set forth in the Motion, Defendants respectfully ask the Court to dismiss the Amended Complaint in its entirety with prejudice.[15]

---

[15] Per the Court's Local Rules, "Footnotes shall be printed in the same size of type utilized in the text." L.Civ.R. 7.2(d) Affidavits and Briefs. The Opposition did not comply with this rule and if Plaintiffs had properly followed the Local Rules their Opposition would have substantially exceeded the page limits.

AMERICAS 130460081

Dated: July 14, 2025

By: */s/ Jessica L. Brennan*
Jessica L. Brennan
**BARNES & THORNBURG LLP**
67 E. Park Place, Suite 1000
Morristown, New Jersey 07960
Tel: (973) 775-6120
jessica.brennan@btlaw.com

Kristen R. Fournier (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4777
kristen.fournier@kirkland.com

*Attorney for Defendants Johnson &
Johnson, Johnson & Johnson Holdco
(NA) Inc., Kenvue, Inc., Janssen
Pharmaceuticals, Inc., and Red River
Talc LLC f/k/a LLT Management LLC
f/k/a LTL Management LLC.*

Glenn M. Kurtz (*pro hac vice*)
Jessica C. Lauria (*pro hac vice*)
Gregory M. Starner (*pro hac vice*)
Matthew E. Linder (*pro hac vice*)
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 819-8200
gkurtz@whitecase.com
jessica.lauria@whitecase.com
gstarner@whitecase.com
mlinder@whitecase.com

*Attorneys for Defendants Johnson &
Johnson, Johnson & Johnson Holdco
(NA) Inc., Kenvue, Inc., and Janssen
Pharmaceuticals, Inc.*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this case.


*<u>/s/ Jessica L. Brennan</u>*
Jessica L. Brennan

AMERICAS 130460081