**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| REBECCA LOVE, D.D.S., *et al.*, individually and on behalf of a proposed class, <br><br> Plaintiffs, <br><br> v. <br><br> RED RIVER TALC, LLC f/k/a LLT MANAGEMENT LLC f/k/a LTL MANAGEMENT, LLC, *et al.*, <br><br> Defendants. | Civil Action No. 24-6320 (MAS) (RLS) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Red River Talc, LLC ("Red River"), Johnson & Johnson ("J&J"), Johnson & Johnson Holdco (NA), LLC, Janssen Pharmaceuticals, Inc. ("Janssen"), and Kenvue Inc.'s (collectively, "Defendants") Motion to Dismiss (the "Motion") (ECF No. 88) Plaintiffs Rebecca Love, D.D.S. ("Love"), Sharon Murphy, William A. Henry, Alishia Gayle Davis, and Brandi Carl's (collectively, "Plaintiffs") Amended Complaint (ECF No. 65). Plaintiffs opposed (ECF No. 90), and Defendants replied (ECF No. 91). After careful consideration of the parties' submissions, the Court decides Defendants' Motion to Dismiss without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons outlined below, Defendants' Motion to Dismiss is granted.

I.   **BACKGROUND**[1]

This action arises out of the long-running multidistrict litigation captioned *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation* (the "Talc Litigation"). (MDL No. 16-2738.) Because the parties are familiar with the underlying MDL, the Court recounts only those facts necessary to resolve the instant motion.

In October 2021, while the Talc Litigation was pending, J&J executed a divisional merger under Texas law (the "Divisive Merger"), pursuant to which its subsidiary, Johnson & Johnson Consumer, Inc. ("Old JJCI"), was split into two new entities: LTL Management, LLC ("LTL") and New JJCI. (Am. Compl. ¶¶ 59-61, ECF No. 65.) In practical effect, the Divisive Merger allowed J&J to assign its liabilities connected to the Talc Litigation to LTL, while all other liabilities and assets were assigned to New JJCI. (*Id.* ¶ 62.) Shortly after the Divisive Merger, LTL filed for Chapter 11 bankruptcy (the "First Bankruptcy Action"),[2] triggering an automatic stay of the Talc Litigation. (*Id.* ¶ 67.)

The Official Committee of Talc Claimants and various other parties (collectively, "Movants") moved to dismiss the First Bankruptcy Action, arguing that it had been filed in bad faith. *See In re LTL Mgmt., LLC*, 64 F.4th 84, 93 (3d Cir. 2023). The Bankruptcy Court for the District Court of New Jersey denied the motion and extended the automatic stay, which Movants appealed. *Id.* While Movants' appeal was pending, J&J transferred its consumer health business

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[2] The First Bankruptcy Action was filed in the Bankruptcy Court for the Western District of North Carolina, and later transferred to the Bankruptcy Court for the District of New Jersey. *See In re LTL Mgmt., LLC*, 64 F.4th 84, 93 (3d Cir. 2023).

2

out of New JJCI and into Janssen, a J&J subsidiary that served as New JJCI's corporate parent (the "Janssen Transfer"). (Am Compl. ¶¶ 73-74.)

The Third Circuit ultimately reversed the Bankruptcy Court for the District of New Jersey, holding that the First Bankruptcy Action was not filed in good faith because LTL was not in financial distress. *In re LTL Mgmt.*, 64 F.4th at 110-11. Following that ruling, LTL expressed concerns regarding the viability of a funding agreement it had with J&J (the "2021 Funding Agreement"), and abandoned the agreement, releasing J&J and First HoldCo (a successor to New JJCI) from their guarantees and obligations to satisfy claims against LTL. (Am. Compl. ¶¶ 84-88.) This release allegedly put LTL in financial distress and caused it to refile for bankruptcy (the "Second Bankruptcy Action") less than three hours after the dismissal of the First Bankruptcy Action. (*Id.* ¶¶ 91-92.) LTL subsequently entered a new funding agreement (the "2023 Funding Agreement"), pursuant to which First HoldCo was to cover LTL's liabilities. (*Id.* ¶ 90.) The Second Bankruptcy Action, however, was similarly dismissed "due to LTL's lack of imminent and immediate financial distress." *In re LTL Mgmt. LLC*, 652 B.R. 433, 456 (Bankr. D.N.J. July 28, 2023), *aff'd*, Nos. 23-2971 & 23-2972, 2024 WL 3540467 (3d Cir. July 25, 2024).[3]

In May 2024, J&J announced plans for a third bankruptcy, this time as a prepackaged bankruptcy plan to be filed by a new corporate entity, Red River. (Am. Compl. ¶ 96.) The prepackaged Chapter 11 plan, as amended, proposed to pay approximately $9 billion to resolve all current and future ovarian and other gynecological-cancer claims. *In re Red River Talc LLC*, No. 24-90505, 670 B.R. 251, 257 (Bankr. S.D. Tex. Mar. 31, 2025). Moreover, Defendants stated they would not proceed with the proposed bankruptcy filing unless 75% of claimants voted in favor of the plan. (*See* Am. Compl. ¶ 179.)

---

[3] In December 2023, LTL was renamed to LLT Management, LLC ("LLT"). (Am. Compl. ¶ 95.)

3

On May 22, 2024, Plaintiffs filed the instant action and moved for a temporary restraining order and preliminary injunction to prevent Defendants from pursuing a new bankruptcy filing. (*See generally* Compl., ECF No. 1; ECF No. 6.) The Court denied Plaintiffs' motion for lack of standing and found that the claims were not ripe for adjudication. (Order, ECF No. 31.)[4]

In August 2024, J&J executed a series of corporate restructurings (the "2024 Texas Two-Step") to create three new entities: Red River, Pecos River Talc, LLC, and Johnson & Johnson Holdco (NA) LLC.[5] (Am. Compl. ¶ 106.) Red River thereafter filed for bankruptcy (the "Third Bankruptcy Action") in the Bankruptcy Court for the Southern District of Texas, contending that 83% of claimants in the Talc Litigation had voted in favor of the prepackaged plan. *In re Red River Talc LLC*, 670 B.R. at 258. In light of the Third Bankruptcy Action, and pursuant to an order from the Bankruptcy Court for the Southern District of Texas, this action was stayed. (ECF No. 53.)

On March 31, 2025, the Bankruptcy Court for the Southern District of Texas denied the Third Bankruptcy Action, citing "voting and solicitation irregularities," and finding it was in the "best interest" of Red River, its estate, J&J, and creditors to dismiss the case for cause. *In re Red River Talc LLC*, 670 B.R. at 307.

The Court thereafter lifted its stay in this action (ECF No. 54), and Plaintiffs filed an Amended Complaint (ECF No. 65). The Amended Complaint alleges that Defendants' various

---

[4] Plaintiffs appealed and sought an emergency injunction pending appeal. (ECF No. 37); *Love v. LLT Mgmt. LLC*, No. 24-2214 (3d Cir. July 5, 2024), Dkt. 5 (Ex. G). The Third Circuit summarily denied the motion for an emergency injunction, and Plaintiffs voluntarily dismissed their appeal. (Order Den. Mot. for Inj., 3d Cir. App., Dkt. 26 (Ex. H); Stip. of Dismissal, 3d Cir. App., Dkt. 36 (Ex. I).)

[5] As part of this restructuring, LLT allocated its ovarian and gynecological cancer liabilities to Red River, and its mesothelioma, governmental, and Canadian claims to Pecos River Talc, LLC. (Am. Compl. ¶¶ 94, 98 n.7.)

4

corporate restructurings constitute fraudulent transfers, as they were undertaken to "hinder[], delay[], and/or defraud[] tort victims by precluding recovery against J&J and its operating subsidiaries." (Am. Compl. ¶ 21.) Specifically, Plaintiffs allege that Defendants': (1) Divisive Merger; (2) Janssen Transfer; (3) termination of the 2021 Funding Agreement; and (4) 2024 Texas Two-Step, individually and collectively constitute fraudulent transfers, and that Defendants' pursuit of the Third Bankruptcy Action without receiving "the requisite 75% vote in favor" constitutes malicious abuse of process. (*Id.*) Defendants moved to dismiss the Amended Complaint (ECF No. 88). The Motion is now ripe for disposition.

## II. LEGAL STANDARD

### A. Motion to Dismiss

Federal Rule of Civil Procedure[6] 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court

---

[6] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B. Justiciability

Article III of the Constitution limits the federal judiciary's authority to exercise its "judicial Power" to "Cases" and "Controversies" over which the federal judiciary is empowered to decide. *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 538 (3d Cir. 2017) (quoting U.S. Const. art. III, § 2). "This case-or-controversy limitation, in turn, is crucial in 'ensuring that the Federal Judiciary respects the proper—and properly limited—role of the courts in a democratic society.'" *Id.* at 539 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). The existence of a case or controversy, therefore, is a necessary "prerequisite to all federal actions." *Phila. Fed'n of Teachers. v. Ridge*, 150 F.3d 319, 322 (3d Cir. 1998) (quoting *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994)).

Federal courts ensure that they are properly enforcing the case-or-controversy limitation through "'several justiciability doctrines that cluster about Article III,' including 'standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions.'" *Plains*, 866 F.3d at 539 (quoting *Toll Bros., Inc. v. Township of Readington*, 555 F.3d 131, 137 (3d Cir. 2009)). Where a justiciability doctrine, like ripeness or standing, is implicated, "[f]ederal courts lack [subject-matter] jurisdiction to hear" parties' claims, and the claims must be dismissed.

*See Battou v. Sec'y U.S. Dep't of State*, 811 F. App'x 729, 732 (3d Cir. 2020) (citing *Armstrong World Indus., Inc. ex rel Wolfson v. Adams*, 961 F.2d 405, 410-11 (3d Cir. 1992)).[7]

## III. DISCUSSION

Defendants move to dismiss the Amended Complaint under Rule 12(b)(6) for lack of standing and for failure to state a claim. (ECF No. 88) Because standing implicates the Court's subject matter jurisdiction, the Court addresses Article III standing as a threshold issue. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014).

"To establish Article III standing, a plaintiff must show[:] (1) an 'injury in fact[;]' (2) a sufficient 'causal connection between the injury and the conduct complained of[;]' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). This injury must be an "invasion of a legally protected interest which is[:] (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *West v. Health Net of the Ne.*, 217 F.R.D. 163, 173 (D.N.J. 2003) (quoting *Lujan*, 504 U.S. at 560). For an injury to be imminent, as opposed to actual, it must be "certainly impending to constitute [an] injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). "[A]llegations of possible future injury" are not "certainly impending," and therefore, are not imminent. *See Clapper*, 568 U.S. at 400 (emphasis omitted) (quoting *Whitmore*, 495 U.S. at 158). As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing these elements. *Lujan*, 504 U.S. at 560.

---

[7] "Federal courts are courts of limited jurisdiction and have an obligation to establish subject matter jurisdiction, even if they must decide the issue sua sponte." *Cepulevicius v. Arbella Mut. Ins.*, No. 21-20332, 2022 WL 17131579, at *1 (D.N.J. Nov. 22, 2022) (emphasis omitted) (citing *Liberty Mut. Ins. Co. v. Ward Trucking Co.*, 48 F.3d 742, 750 (3d Cir. 1995)); *see also Council Tree Commc'ns, Inc. v. FCC*, 503 F.3d 284, 292 (3d Cir. 2007).

Plaintiffs contend that they were harmed by Defendants' fraudulent transfers because Defendants' "bad-faith Chapter 11 bankruptcy filings" triggered repeated stays in the Talc Litigation, which resulted in Plaintiffs "los[ing] the time value of any money that could have been paid as a judgment." (Pls.' Opp'n Br. 13, 20-21, ECF No. 90; *see also id.* 20-21 (arguing Plaintiffs have "endured waits [of] up to four years" as a result of Defendants' conduct).) Plaintiffs' asserted injury, however, is insufficient to confer Article III standing.

As an initial matter, Plaintiffs fail to cite any authority holding that a delay in litigation—whether caused by a bankruptcy stay or otherwise—constitutes a cognizable injury for the purposes of Article III standing. (*See* Pls.' Opp'n Br. 11-30.) While Plaintiffs expend much ink citing to treatises and historical records from "the law of the 13th year of the reign of Queen Elizabeth" to the modern era, none of these authorities support the proposition that a litigation delay alone constitutes an injury in fact. (*See id.*) At most, these authorities stand for the unremarkable proposition that a transfer intended to hinder or delay a creditor's collection of an existing debt may constitute a fraudulent transfer. *See Firmani v. Firmani*, 752 A.2d 854, 858 (N.J. Super. Ct. App. Div. 2000) (finding there was a fraudulent conveyance where the defendant transferred an asset to greatly hinder and delay plaintiff's ability to "collect the debt [defendant] owe[d] [plaintiff]"). Here, however, Plaintiffs do not allege that the alleged *transfers* delayed their collection of an existing debt—rather, they allege that the *litigation stays* that were mandated due to Defendants' bankruptcy filings delayed their collection of a potential judgment in the Talc Litigation. (*See* Am. Compl. ¶¶ 115-119 (arguing Plaintiffs were harmed because their cases "were subject to stays imposed as a result of Defendants' . . . wrongful conduct").)

Even assuming protracted litigation due to a bankruptcy stay could constitute a cognizable injury, Plaintiffs' alleged harm is too speculative to confer standing. *Lujan*, 504 US. at 560-61.

Plaintiffs generally allege that "Defendants have shorted Plaintiffs of their ultimate recoveries in order to hoard Defendants' corporate free cash flow" by the time value of money. (Pls.' Opp'n Br. 2, 20-21.) Plaintiffs, however, do not quantify such harm, nor can the Court plausibly infer any actual harm as a result of Defendants' conduct. *Finkelman v. Nat'l Football League*, 810 F.3d 187 (3d Cir. 2016) (holding that a plaintiff must do more than offer conclusory assertions of economic injury in order to establish standing).

Rather, Plaintiffs' allegations make clear that their claimed injury is entirely hypothetical, as it is contingent on Plaintiffs first prevailing in the Talc Litigation. If, for example, Defendants prevail on the cases in the Talc Litigation, Plaintiffs will not be entitled to any recovery and therefore will not suffer any injury from the allegedly fraudulent transfers or by the "time-value of money."[8] (Am. Compl. ¶ 3.) This sort of "tenuous chain of uncertain events" does not suffice to establish the requisite injury. *See Firearms Pol'y Coal., Inc. v. Barr*, 419 F. Supp. 3d 118, 124 (D.D.C. 2019), *aff'd sub nom.*, *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 19-5304, 2020 WL 6580046 (D.C. Cir. Oct. 30, 2020); *see also Giordano v. Wachovia Secs., LLC*, No. 06-476, 2006 WL 2177036, at *4 (D.N.J. July 31, 2006) ("The mere possibility of future harm fails to satisfy the standing requirements of the Supreme Court and Third Circuit Court of Appeals."); *Patrick v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 860 F. App'x 828,

---

[8] While Plaintiffs repeatedly suggest Defendants presently owe them a debt that they are entitled to collect on, (*see* Am. Compl. ¶ 22 (alleging Defendants engaged in the transfers to reduce the amount Defendants "ultimately *will pay* all present and future talc claimants" (emphasis added)); *id.* ¶ 3 (alleging that Defendants sought to "reduce and limit what Defendants *had* to pay Plaintiffs and other talc victims" (emphasis added))), the Court reminds Plaintiffs that the Talc Litigation remains ongoing, and Defendants do not possess any adjudicated liability on Plaintiffs' claims. While Defendants have attempted to resolve these claims through prior bankruptcy proceedings, those undertakings have no bearing on Defendants' ultimate liability in the Talc Litigation and do not establish that Plaintiffs are presently entitled to judgment or recovery.

834 (4th Cir. 2021) (describing the plaintiff's theory as a "string of hypothetical contingencies" insufficient to establish a real and particularized injury for the purposes of standing).

Finally, the Court notes that Plaintiffs' theory of injury is fundamentally incompatible with the structure and purposes of the Bankruptcy Code. The Bankruptcy Code authorizes bankruptcy courts to grant relief from automatic stays "for cause," and the decision to lift or continue an automatic stay "is committed to the sound discretion of the bankruptcy court." *In re Pacor, Inc.*, 74 B.R. 20, 22 (E.D. Pa. 1987); 11 U.S.C. § 362(d). Accepting Plaintiffs' theory that delays attributable to routine bankruptcy stays constitute an Article III injury would improperly circumvent that framework and undermine the comprehensive and carefully calibrated regulatory scheme governing bankruptcy proceedings. No court has endorsed such a theory, and the Court declines to do so here. *See, e.g., Bednar v. Pierce & Assocs., P.C.*, 220 F. Supp. 3d 860, 863-64 (N.D. Ill. 2016) (holding that state law claims were preempted by the Bankruptcy Code because permitting such claims "would pile on additional state-law deterrent[s] that [are] improper given the comprehensive regulations provided by the bankruptcy system").

Because Plaintiffs fail to plausibly allege even a "trifle of injury" stemming from Defendants' alleged conduct, this Court lacks jurisdiction to reach the merits of Plaintiffs' claims. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014); *Lewis v. Casey*, 518 U.S. 343, 349 (1996) (cautioning that the role of courts is to provide relief to claimants "who have suffered, or will imminently suffer, actual harm").[9]

---

[9] Because the Court dismisses Plaintiffs' claims for lack of standing, the Court does not reach Defendants' alternative arguments for dismissal. *See Commc'ns Workers of Am. v. Alcatel-Lucent USA Inc.*, No. 15-8143, 2016 WL 7013463, at *9 (D.N.J. Nov. 30, 2016).

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion is granted, and Plaintiffs' claims are dismissed without prejudice.[10] The Court will issue an Order consistent with this Memorandum Opinion.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

DATED: January 29, 2026

---

[10] Ordinarily, dismissals for lack of standing are without prejudice to a plaintiff's right to file an amended complaint. *Goode v. City of Phila.*, 539 F.3d 311, 327 (3d Cir. 2008).